*250 Vacated and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Judge WYNN joined. Chief Judge TRAXLER wrote a dissenting opinion.
OPINION
GREGORY, Circuit Judge:
Appellant Temitope Akinsade appeals the district court’s denial of his petition for writ of error coram nobis pursuant to 28 U.S.C. § 1651 claiming that he was denied effective assistance of counsel when he plead guilty to embezzlement by a bank employee in violation of 18 U.S.C. § 656, a Class B felony. For the following reasons, we grant the petition and vacate Akinsade’s conviction.
I.
Now thirty years old, Akinsade is a Nigerian citizen who legally came to America in July 1988 at the age of seven and became a lawful permanent resident in May 2000. In 1999, at the age of nineteen, Akinsade was employed as a teller at a Chevy Chase bank in Aspen Hill, Maryland. During his employment, Akinsade cashed checks for several neighborhood acquaintances, who were not listed as payees on the checks, and deposited a portion of the proceeds from those checks into his own account. Eventually, Akinsade reported the transactions to his supervisor, who then contacted the FBI. When interviewed by the FBI several months later, Akinsade agreed to cooperate against the individuals for whom he cashed the checks. Neither arrested nor taken into custody at that time, Akinsade was ordered to appear in court at a later date.
On March 1, 2000, Akinsade was charged with embezzlement by a bank employee in the amount of $16,400. 18 U.S.C. § 656 (1948). Considering the Government’s plea agreement, Akinsade asked his attorney on at least two different occasions about the potential immigration- consequences of a guilty plea. Both times his attorney misadvised him that he could not be deported based on this single offense. His attorney told him that he could only be deported if he had two felony convictions. This advice was contrary to the law at that time. See 8 U.S.C. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii) (1952).
Relying on his attorney’s advice that one count of embezzlement was not a deportable offense, Akinsade pled guilty. The plea agreement made no mention that deportation was mandatory or even possible due to the offense. During the Rule 11 plea colloquy, the district court reviewed the civil ramifications of his plea:
The Court: [Pjeople who are found guilty of felonies, often lose their right to vote, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can’t possess firearms. Certain jobs may be denied you.
If you are on parole or probation with another system, that can be affected. Or if you are not a citizen, you could be deported. All of these things could be triggered by being found guilty of a felony. Do you understand that?
Akinsade: Yes, Your Honor.
The Court: Knowing that do you still wish to plead guilty?
Akinsade: Yes, Your Honor.
Supp. J.A.(I) 1.
On June 5, 2000, the district court sentenced Akinsade to one month of imprisonment to be served in community confinement, a three-year term of supervised release, and a special assessment of $100. At sentencing, the district court recognized that Akinsade had paid the full amount of restitution, which came to *251 $8,000. The court also determined that Akinsade’s conduct was “out of character” based on his family background. J.A. 41. The court thus gave Akinsade the minimum sentence under the sentencing guidelines.
After serving his sentence, Akinsade attended the University of Maryland where he received a bachelor’s degree in computer science. He later earned a master’s degree from the university, graduating with a 3.9 GPA, and received a fellowship from the National Science Foundation. Akinsade then entered into a leadership program at General Electric Company and moved to upstate New York.
Almost nine years after Akinsade’s conviction, on January 8, 2009, immigration authorities arrested him at home and placed him in detention in Batavia, New York. After seventeen months in detention, the immigration authorities released Akinsade and charged him with removability as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his 2000 embezzlement conviction.[1]
Under threat of deportation,[2] Akinsade filed this petition for writ of error coram nobis in federal court alleging a violation of his Sixth Amendment rights due to his counsel’s misadvice. The Government argued that Akinsade was not entitled to this extraordinary remedy because he alleged “a mere garden-variety ineffective assistance of counsel claim” that was not a “fundamental error.” J.A. 50.
After conducting a hearing, the district court denied the petition. The court held that while counsel’s affirmative misrepresentations rendered his assistance constitutionally deficient under the first prong of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Akinsade was not prejudiced as required under Strickland’s second prong. It reasoned that its admonishment of the potential for deportation during the plea colloquy cured counsel’s affirmative misrepresentations. Akinsade timely appeals the denial of the petition.[3]
II.
This Circuit has not clearly expressed the standard with which to review *252 a district court’s denial of a petition of writ of error coram nobis. See United States v. Wilson, No. 94-7322, 1996 WL 71098, at *2 (4th Cir. Feb. 7, 1996) (finding that the district court did not abuse its discretion when it denied the petitioner’s writ of error coram nobis without an evidentiary hearing). Other circuits have applied an abuse-of-discretion standard in this context. See United States v. Peter, 310 F.3d 709, 711 (11th Cir.2002); Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (quoting Foont v. United States, 93 F.3d 76, 78 (2d Cir.1996)). We apply the same standard and thus review “the district court’s ultimate decision to deny the writ for abuse of discretion.” Santos-Sanchez v. United States, 548 F.3d 327, 330 (5th Cir.2008), abrogated on other grounds by Padilla v. Kentucky, - U.S. -, 130 S.Ct. 1473, 1481, 176 L.Ed.2d 284 (2010).
As a remedy of last resort, the writ of error coram nobis is granted only where an error is “of the most fundamental character” and there exists no other available remedy. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir.1988). The writ is narrowly limited to “ ‘extraordinary’ cases presenting circumstances compelling its use ‘to achieve justice.’ ” United States v. Denedo, 556 U.S. 904, 129 S.Ct. 2213, 2220, 173 L.Ed.2d 1235 (2009) (quoting United States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). Thus, the writ provides relief in cases where the error “rendered the proceeding itself irregular and invalid.” United States v. Addonizio, 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A petitioner seeking this relief must show that “(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.” Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir.1987). For the following reasons, we hold that Akinsade has met all four requirements.
First, Akinsade cannot seek relief under the typical remedies for a direct or collateral attack of a federal judgment and sentence because he is no longer in custody. See 28 U.S.C. § 2255 (1948); 28 U.S.C. § 2241 (1948). Second, valid reasons exist for Akinsade not attacking the conviction earlier. Until physically, detained by immigration authorities in 2009, Akinsade had no reason to challenge the conviction as his attorney’s advice, up to that point in time, appeared accurate.[4] With respect to the third coram nobis requirement, the risk of deportation is an adverse consequence of conviction sufficient to create a case or controversy as required by Article III of the Constitution. See United States v. Kwan, 407 F.3d 1005, 1014 (9th Cir.2005), abrogated on other grounds by Padilla, 130 S.Ct. 1473.
Under the final requirement, we must consider whether counsel’s misadvice is an error of the “most fundamental character” *253 such that coram nobis relief is required to “achieve justice.” Denedo, 129 S.Ct. at 2220. To determine this, we examine the merits of Akinsade’s ineffective assistance of counsel claim to decide whether Akinsade has been prejudiced. See Mandel, 862 F.2d at 1074-75.
A.
To show prejudice, Akinsade must demonstrate that but for his counsel’s error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The district court determined that Akinsade had not been prejudiced because its admonishment regarding potential immigration consequences of the guilty plea and Akinsade’s acknowledgement of that admonishment functioned to correct the error of his counsel’s affirmative misrepresentations. We disagree in light of the equivocal nature of the admonishment, counsel’s affirmative misadviee that is clearly contrary to law, and the severity of the consequence itself.
A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadviee and the defendant expresses that he understands the admonishment. United States v. Hernandez-Monreal, 404 Fed.Appx. 714, 715 (4th Cir.2011) (finding that the defendant was not prejudiced by counsel’s failure to advise of deportation consequences when, during his Rule 11 proceeding, the defendant “affirmatively acknowledged his understanding that his plea ‘could definitely make it difficult, if not impossible, for [him] to successfully stay legally in the United States’ ”); State v. Yahya, No. 1 0AP1190, 2011 WL 5868794, at *5 (Ohio Ct.App. Nov. 22, 2011) (“[A] trial court’s delivery of the warning [that defendant might be deported] would not necessarily cure her attorney’s specific error regarding the consequences of a guilty plea.”). Thus, in United States v. Foster, 68 F.3d 86, 88 (4th Cir.1995), this Circuit determined that the defendant had not been prejudiced by any allegedly incorrect information counsel gave him regarding his sentence because of the district court’s “careful explanation of the potential severity of the sentence” during the Rule 11 hearing. Id. at 88.[5] As part of the “careful explanation,” the district court “specifically informed [the defendant] of the maximum penalties he faced,” and asked whether he understood that he was exposing himself to “possible maximum penalties of up to 20 years in prison” plus “a supervised release term of as much as five years and at least three years.” Id. The district court further asked whether the *254 defendant understood that “the extent of [his] involvement in this particular offense, [and] [his] past record, if any” would affect his sentence. Id. Since the district court had “properly informed [the defendant] of the potential sentence he faced,” this Circuit concluded that “he could not be prejudiced by any misinformation his counsel allegedly provided him.” Id.
The case before us is decidedly different. Unlike Foster, the district court’s admonishment was far from a “careful explanation” of the consequences of deportation. Instead, the district court warned that Akinsade’s plea could lead to deportation. This general and equivocal admonishment is insufficient to correct counsel’s affirmative misadvice that Akinsade’s crime was not categorically a deportable offense.[6] More importantly, the admonishment did not “properly inform” Akinsade of the consequence he faced by pleading guilty: mandatory deportation. Thus, Akinsade could not have known that deportation was a legally mandated consequence of his plea. Had he known this, he alleges that he would have chosen to go to trial rather than plead guilty. J.A. 56 (“Had I known that my immigration status would be impacted by a guilty plea, I would not have entered such a plea ....”) (emphasis added). Akinsade’s concern over certain deportation is evident by the fact that he asked his counsel twice if a plea would affect his immigration status. Kwan, 407 F.3d at 1017 (quoting Hill, 474 U.S. at 60, 106 S.Ct. 366) (explaining that a defendant’s inquiry regarding deportation demonstrates “that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty”) (internal quotation marks omitted).
As recognized in Foster, the specificity and breadth of the district court’s admonishment are important considerations in deciding whether the defendant is prejudiced. These considerations are equally as important in this case where the advice given is patently erroneous and the consequences at stake are “particularly severe,” Padilla, 130 S.Ct. at 1481 (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740, 13 S.Ct. 1016, 37 L.Ed. 905 (1893)), and will likely result in the “loss of both property and life, or of all that makes life worth living,” Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922). “Preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence.” INS v. St. Cyr, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The severity of the consequence at issue and the clear error made by counsel in rendering the advice warrants a curative admonishment that is specific and unequivocal as to the deportation consequences of Akinsade’s conviction.
*255 Our decision today does not change the role of or impose any new obligations on the district court in Rule 11 proceedings. A district court’s duty to ensure a knowing and voluntary plea arises from the Fifth Amendment’s guarantee of due process and thus affords defendants a right distinct from the Sixth Amendment right to effective assistance of counsel. While we have recognized the inter-relationship between the two amendments in the context of guilty pleas, see United States v. Smith, 640 F.3d 580, 582 (4th Cir.2011), we have never suggested that the sufficient protection of one right automatically corrects any constitutional deficiency of the other. Indeed, the Supreme Court has rejected a very similar argument. See Missouri v. Frye, 566 U.S.-, 132 S.Ct. 1399, 1406, 182 L.Ed.2d 379 (2012) (explaining that the Court in Padilla, 130 S.Ct. 1473 (2010), rejected the state’s argument that a knowing and voluntary plea supersedes defense counsel’s affirmative misadvice on deportation consequences). As a result, we in no way suggest that in performing its role during the proceeding, a district court needs to be “clairvoyant” or must “guess” about whether a defendant has been misinformed regarding a particular consequence of a plea. When, as here, the claim raised is that of ineffective assistance of counsel, the overall focus must be on the prejudice arising from counsel’s deficient performance. If a district court’s admonishment so happens to correct the deficient performance then there is no prejudice; however, if there is no correction, then our scrutiny is not directed toward the district court but appropriately to the constitutional offender.
Finally, we note that requiring a curative admonishment in this case that properly informed Akinsade that his plea was to a deportable offense is consistent with the Supreme Court’s recent decision in Lafler v. Cooper, 556 U.S. -, 132 S.Ct. 1376, 1386, 182 L.Ed.2d 398 (2012), which explained that for a fair trial to function as a cure for a pre-trial error such as ineffective assistance during the plea process, that “particular error” must be addressed at trial. Similarly, in order for a district court’s admonishment to be curative, it should address the particular issue underlying the affirmative misadvice. Here, the district court’s admonishment touches upon the consequence of deportation but does not correct the particular misadvice given by counsel.
B.
Akinsade still must show that the misadvice is a “but for” cause of his entering the guilty plea. Under the prejudice prong of Strickland, “[t]he potential strength of the state’s case must inform our analysis, inasmuch as a reasonable defendant would surely take it into account.” Ostrander v. Green, 46 F.3d 347, 356 (4th Cir.1995) (citing Hill, 474 U.S. at 59-60, 106 S.Ct. 366) overruled on other grounds by O’Dell v. Netherland, 95 F.3d 1214 (4th Cir.1996) (en banc). Applying this standard, we have held that counsel’s affirmative misadvice on collateral consequences to a guilty plea was prejudicial where the prosecution’s evidence “proved to be more than enough” for a guilty verdict but was “hardly invincible on its face.” Ostrander, 46 F.3d at 356. We have further found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation. United States v. Gajendragadkar, No. 97-7267, 1998 WL 352866, at *2 (4th Cir. June 3, 1998). In Gajendragadkar we reasoned that “[although a trial would present the risk of deportation, it would provide [the defendant] the opportunity to contest the *256 Government’s evidence, or failing that, to challenge the Government’s estimate loss.” Id.
Our reasoning in Gajendragadkar applies here. AMnsade pleaded guilty to a deportable offense that “involve[d] fraud or deceit in which the loss to the victim or victims exceeded] $10,000.” 8 U.S.C. § 1101 (a)(43)(M)(i) (1952); see also 8 U.S.C. § 1227(a)(2)(A)(iii) (1952). Before the district court, Akinsade’s counsel asserted that if AMnsade had gone to trial, he would have argued that the amount of loss was $8,000. His counsel noted that AMnsade was ordered to pay restitution in the amount of $8,000, which he had paid in full, and further that Akinsade would have disputed his involvement with a third check that placed him over the $10,000 amount. Consequently, the choice to go to trial is rational and we cannot conclude that “ ‘a reasonable defendant in [AMnsade’s] shoes, having asked for, received, and relied upon encouraging advice’ about the risks of deportation, ‘would have pled guilty anyway had he known’ that his attorney was mistaken.” Gajendragadkar, 1998 WL 352866, at *2 (quoting Ostrander, 46 F.3d at 356). Thus, we find that counsel’s affirmative misrepresentations that the crime at issue was non-deportable prejudiced Akinsade. Akinsade has met his burden under prong two of Strickland. In doing so, he has also demonstrated that he has suffered a fundamental error necessitating coram nobis relief. See Kwan, 407 F.3d at 1014 (ineffective assistance of counsel is a fundamental error); United States v. Castro, 26 F.3d 557, 559 (5th Cir.1994) (same).
III.
Accordingly, we grant the petition for writ of error coram nobis and vacate AMnsade’s conviction.[7]

VACATED & REMANDED

. At oral arguments the Government stated that the reason for the nine-year delay in Akinsade’s arrest for deportation was due to "the confusion” arising from his receipt of a green card between the time of the plea agreement and his sentence for embezzlement.

. Akinsade moved for a stay of his deportation proceedings pending this appeal. We denied his motion on April 14, 2010. During oral arguments, the Government informed the Court that Akinsade’s appeal of his deportation was pending before the Second Circuit.

. After Akinsade filed his opening brief, the Government moved to hold the appeal in abeyance pending the Supreme Court's decision in Padilla v. Kentucky,-U.S.-, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We granted the motion and suspended all briefing. On March 31, 2010, the Supreme Court rendered its decision in Padilla. In May 2010, the case was removed from abeyance and the parties completed their briefing taking into consideration Padilla. Having reviewed the Padilla decision and the parties’ briefs, we decline to address the issue of whether Padilla is retroactively applicable to this case. Padilla only reached prong one of Strickland and neither party challenges the district court’s holding that the affirmative misrepresentations provided by Akinsade's counsel were constitutionally deficient. Consequently, the Padilla decision is not "a necessary predicate to the resolution” of the issues raised on appeal and we need not reach the retroactivity issue. Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (noting that the retroactivity principle set forth in Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is not jurisdictional such that it must be raised and decided by the courts).

. The dissent contends that the district court did not make a finding as to whether valid reasons exist to explain why Akinsade did not seek appropriate relief sooner. To support this contention, the dissent cites Nicks v. United States, 955 F.2d 161, 167-68 (2d Cir.1992). In that case, the Second Circuit concluded that the record before it was insufficient to resolve this requirement. Id. As a result, the court remanded the case to the district court to make any necessary factual findings. In this case however, the record demonstrates that Akinsade had not discovered that his counsel misadvised him until he was physically detained by immigration authorities nine years later. Because the record is sufficient for us to decide the issue, we need not remand the case.

. The dissent cites United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir.1992) (en banc), where this Circuit noted that in the context of deciding whether a defendant has presented a "fair and just reason” for a Rule 32(d) motion to withdraw a guilty plea, a district court may look outside of the Rule 11 proceeding to events or information that affected the fairness of the proceeding. The Lambey Court reasoned that the outside information would not have affected the fairness of the Rule 11 proceeding if a district court "corrects or clarifies the erroneous information given by the defendant's attorney and the defendant admits to understanding the court’s advice.” Id. at 1395. Although Lambey referred to a curative admonishment, we should keep in mind that this passage was in the context of a Rule 32(d) challenge that centers on the fairness of a Rule 11 proceeding. See id. at 1394 (a Rule 32(d) motion “essentially challenges either the fairness of the Rule 11 proceeding or the fulfillment of a promise or condition emanating from the proceeding.” (emphasis added)). Even in this context, we found probative the fact that in curing the erroneous, but not constitutionally deficient, information given by counsel, the court’s admonishment was "clear [] and correct [].” Id. at 1396 (emphasis added).

. In other cases in which the district court's admonishment was found to have corrected counsel's ineffective assistance regarding deportation, the courts inquired into whether the defendant understood the specific warning pertaining to deportation. See Hernandez-Monreal, 404 Fed.Appx. at 715; Gonzalez v. United States, Nos. 10 Civ. 5463(AKH), 08 Cr. 146(AKH), 2010 WL 3465603, *1 (S.D.N.Y. Sept. 03, 2010) (The district court twice advised the defendant that he faced potential deportation and specifically asked the defendant given that risk whether he still wanted to plead guilty.); United Stales v. Cruz-Veloz, Crim. No. 07-1023, 2010 WL 2925048, at *3 (D.N.J. Jul. 20, 2010) (finding the petitioner was not prejudiced by counsel’s failure to advise of deportation consequences because the district court admonished that he would subject himself to deportation and further asked whether he understood the deportation consequence and still wanted to plead guilty). Here, the district court did not elicit a direct response to the deportation admonishment, but instead asked if Akinsade understood a list of generalized warnings of which deportation was a part.

. After oral arguments were heard in this case, the Second Circuit issued its opinion in Akinsade v. Holder, 678 F.3d 138, 143 (2d Cir.2012) on May 1, 2012. In that case, Akinsade challenged the Board of Immigration Appeals's ("BIA”) decision to affirm an order of removal on the basis that Akinsade’s embezzlement conviction qualified as a crime of fraud and deceit, a deportable offense under the Immigration and Nationality Act, § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i). The Second Circuit vacated the order of removal, finding that under a modified categorical approach, Akinsade’s record of conviction did not support the BIA’s conclusion and remanded the case to the BIA for further proceedings consistent with the opinion. 678 F.3d at 147. On May 10, 2012, this Court requested supplemental briefing, instructing the parties to address what effect the Second Circuit opinion has on this case. After reviewing the parties’ briefs, this Court concludes that Akinsade v. Holder has no binding legal effect on our decision and does not guarantee that Akinsade will never face deportation due to his conviction. The Second Circuit opinion does not preclude this Court, or any other Court of Appeals, from coming to a different conclusion on the same legal issue, and the parties have not directed this Court to any precedent in this Circuit that would prevent the Department of Homeland Security from initiating new removal proceedings against Akinsade under more favorable law. The Department is clear that it has not “concede[d] that a conviction for embezzlement by a bank employee ... does not establish that the defendant has been convicted of an aggravated felony offense involving fraud or deceit,” and although the Department has chosen not to seek further judicial or administrative review on Akinsade’s removal proceedings "at this time,” as this Court has explained, it is not foreclosed from doing so in the future. Appellant's Supplemental Br., Ex. 2, p. 2. Finally, this Court cannot ignore the Department's position that the threat of removal would no longer exist in this case “if [the Fourth Circuit] were to vacate the guilty plea to the embezzlement offense.” Id. (emphasis added).