# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Gregg Taylor, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-001118

---

## ON WRIT OF CERTIORARI

---

Appeal from Berkeley County
J. C. Nicholson, Jr., Post-Conviction Relief Judge

---

Opinion No. 27769
Submitted October 17, 2017 – Filed February 28, 2018

---

## REVERSED

---

Mark J. Devine, of Charleston, for Petitioner.

Attorney General Alan M. Wilson and Assistant Attorney General Justin J. Hunter, both of Columbia, for Respondent.

---

**JUSTICE KITTREDGE:** This is a post-conviction relief (PCR) matter in which Petitioner Gregg Taylor, a Jamaican citizen, pled guilty to a drug offense. Petitioner resided in South Carolina for years with his wife and two children, all three of whom are United States citizens. In plea negotiations, Petitioner's primary concern was whether he would be subject to deportation. Plea counsel viewed

Petitioner's grave concern with the prospect of deportation as a "collateral" issue, yet provided general assurances to Petitioner that he would not be deported. As a result, Petitioner pled guilty. The drug offense resulted in Petitioner's deportation, and this PCR application followed. The PCR court denied relief. We granted a writ of certiorari and now reverse.

## I.

Petitioner was indicted for possession with intent to distribute marijuana, which is punishable by up to five years in prison and a fine of $5,000. Petitioner retained counsel to represent him. It appeared the State's case against Petitioner was strong, which prompted counsel to pursue a plea bargain. Following plea negotiations, Petitioner pled guilty to the lesser included offense of possession of more than one ounce of marijuana, which is punishable by up to six months in prison and a $1,000 fine. Petitioner was sentenced to probation.

As a result of his conviction, Petitioner was deported and returned to Jamaica. The essence of the PCR application was counsel's alleged failure to properly advise Petitioner of the law concerning his risk of deportation. Because Petitioner had been deported, he appeared at the PCR hearing by way of an affidavit, wherein he stated counsel assured him that he would not be deported and that but for counsel's erroneous advice, he would not have pled guilty and would have insisted on going to trial.

## A.

The PCR court denied relief. Petitioner argues the PCR judge erred in refusing to find plea counsel was ineffective in failing to advise Petitioner of the immigration and deportation consequences of pleading guilty. "[A]dvice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). If the deportation consequences of a particular plea are unclear or uncertain, "a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. However, where the terms of the relevant immigration statute are "succinct, clear, and explicit" in defining the removal consequence, counsel has an "equally clear" duty to give correct advice. *Id.* at 368–69.

Pursuant to federal law, an alien admitted to the United States who is convicted of

a violation of "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, *is deportable*." 8 U.S.C.A. § 1227(a)(2)(B)(i) (emphasis added).

In his PCR affidavit, Petitioner asserted that counsel misadvised him that his guilty plea would not have any adverse immigration consequences. Specifically, Petitioner stated counsel told him he had "nothing to worry about as to the immigration consequences of [his] plea . . . because [he] never had [his] lawful Permanent Resident Status as yet and accordingly [his] guilty plea would not have [any] consequences on [his] pending application . . . via [his] United States Citizen wife." Petitioner further stated counsel informed him that if he had his Green Card, he "would possibly have to deal with immigration, however because it was pending, *they could not use* [*his*] *guilty plea against* [*him*]." (emphasis added). Petitioner stated plea counsel told him, "I can promise you that you will walk out of that court room a free man in the US, the only thing that you may have to do is 6 months' probation." Finally, Petitioner stated that, had he known he would have faced deportation, he would not have entered a guilty plea, but would have insisted on going to trial.

The PCR court found Petitioner failed to meet his burden of proof. Specifically, the PCR court found plea counsel adequately complied with *Padilla*, and Petitioner "was fully advised that he could face deportation as a result of pleading guilty." Further, the PCR judge found any deficiency on the part of plea counsel was cured by the plea judge during his colloquy with Petitioner. Finally, the PCR judge found Petitioner failed to show that but for counsel's performance, Petitioner would not have pled guilty.

## II.

This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them. *Caprood v. State*, 338 S.C. 103, 109–10, 525 S.E.2d 514, 517 (2000). However, this Court will reverse the PCR court's decision when it is controlled by an error of law or unsupported by the evidence. *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011).

## A.

In *Padilla*, the Supreme Court found the terms of 8 U.S.C.A. § 1227(a)(2)(B)(i)—the same removal statute at issue in the instant case—are "succinct, clear, and

explicit in defining the removal consequences for Padilla's conviction," and "counsel could have easily determined that [Padilla's] plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Padilla*, 559 U.S. at 368–69 ("This is not a hard case in which to find deficiency: The consequences of Padilla's plea could have easily been determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect."). Similar to Padilla, Petitioner's drug charge was a categorically deportable offense.

Counsel's actual advice on the deportation issue was deficient as a matter of law. Counsel did inform Petitioner he *could* face deportation, but counsel failed to advise Petitioner that his deportation was presumptively mandatory. Pursuant to *Padilla*, counsel must do more than "discuss immigration" or advise Petitioner he *might* face adverse immigration consequences. Moreover, it is not clear if plea counsel even understood he had a duty to advise Petitioner of the actual immigration and deportation consequences of his guilty plea. When asked if he had read *Padilla*, counsel responded, "No sir, I don't recall reading that" and further stated:

> Sir, to be quite honest with you [the deportation consequences] wouldn't have mattered in reference to the defense of [Petitioner's] case. It's always going to go back to my protocol of whether the State can prove its case or not. *This is a collateral issue you are discussing.* I would not dwell -- I'll put it this way. Say that I determined hypothetically that he can be deported. Tell me how that assists me in whether or not he is guilty or not and how I can defend him? How does that change that?

(emphasis added).

In fact, the vast majority of plea counsel's PCR testimony shies away from unequivocal statements as to his advising Petitioner regarding the deportation consequences of his plea and, instead, focuses on counsel's "defense protocol" and the steps counsel typically takes in evaluating a client's criminal charges and formulating defenses. When asked if he read the federal deportation and removal statute prior to Petitioner's plea, plea counsel stated "it wouldn't have mattered in reference to the defense of this case" and any deportation or immigration

consequences were "a collateral issue." When asked if, at any point during the decision to plead guilty, counsel talked with Petitioner about his immigration status, counsel responded, "To be honest with you[,] his immigration status is nil in reference to his freedom." When directly asked if he advised Petitioner that his guilty plea carried the possibility of deportation, plea counsel testified his main "concern was [defending] the P-W-I-D marijuana [charge]."

Plea counsel further testified immigration laws "really don't have no [sic] impact if it's not going to help me in defense of my client," and the fact that Petitioner would be subject to deportation as a result of his plea "would have been of small consequences to me in relationship to the fact of what [Petitioner] was charged with and my role as an attorney." In the following exchange, plea counsel asserted it was Petitioner's duty to know the deportation consequences of his plea:

> Q. So why did you not at least look at the removable statute to inform [Petitioner] by pleading guilty he would be subject to deportation?
>
> A. Sir, [Petitioner] had an obligation separate and apart from me to know his rights to come into this country just like every other citizen who is legally in this country is held to the responsibility to know their rights as an American citizen. . . . So if I failed in any manner to heighten the consequences to him[,] I think there was an equal burden on him to know what his rights were when they gave him that [G]reen [C]ard.

Plea counsel's testimony is contrary to *Padilla*. We are bound by *Padilla*, which under the circumstances presented here—the law explicitly defining the removal consequences for Petitioner's conviction—imposed a duty on legal counsel to understand Petitioner's legal status and correctly advise him of the law concerning deportation. Counsel's testimony rejecting any duty to correctly advise a client in a *Padilla* context leaves only Petitioner's affidavit wherein he states, "I depended on my attorney to advise me and inform me properly as to the immigration consequences if accepting the plea deal. . . . If I had known that I would have faced deportation[,] I would have not entered a guilty plea, I would have gone to trial." Given that Petitioner's offense was manifestly one subjecting Petitioner to deportation, we are compelled to find that counsel's failure to correctly advise Petitioner was deficient as a matter of law.

## B.

We turn now to the State's (and the PCR court's) reliance on the plea colloquy to remedy the deficiency. During the plea hearing, before accepting Petitioner's guilty plea, the plea court stated that a guilty plea could "subject [Petitioner] to being removed from this country" and "could affect [Petitioner's] right to remain here." Here, the colloquy was generic in that Petitioner was merely informed that his plea *could affect* his immigration status. In light of *Padilla* and its progeny, we are constrained to conclude that the plea court's general warning failed to cure counsel's deficient representation. We acknowledge that in many circumstances a plea court's standard colloquy will cover a multitude of deficiencies by counsel. *Pittman v. State*, 337 S.C. 597, 600, 524 S.E.2d 623, 625 (1999) ("A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both.'") (quoting *State v. Ray*, 310 S.C. 431, 437, 247 S.E.2d 171, 174 (1993)). But under *Padilla*, special requirements have been added to counsel in the plea bargaining process when a non-citizen is involved. The meaning of *Padilla* would be negated if we allowed general comments from the plea court to satisfy the specific requirements imposed on counsel under the Sixth Amendment. The generic statement by the plea court was no better than counsel's general deportation advice, especially where Petitioner had made it crystal clear that his decision to plead guilty turned on the prospects of deportation.

In our research, we have found two cases, as well as a recent United States Supreme Court decision, which we find sufficiently mirror the case before us and compel the result we reach. The first case is *State v. Sandoval*, 249 P.3d 1015 (Wash. 2011). Sandoval was offered the opportunity to plead to a lesser rape charge that was still an aggravated felony making him subject to mandatory deportation. When Sandoval informed his attorney he did not want to plead guilty if the plea would result in his deportation, counsel told him he should accept the plea offer because he would not be immediately deported and would have sufficient time to retain proper immigration counsel to ameliorate any potential immigration consequences of his plea. *Id.*

Sandoval pled guilty and signed a plea statement containing the following warning: "If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United

States." *Id.* The plea judge confirmed in a colloquy that Sandoval had reviewed the statement with his counsel and understood the warning. *Id.*

Noting the *Padilla* Court specifically stated "how critical it is for *counsel* to inform her noncitizen client that he faces a risk of deportation," the Washington Supreme Court found the guilty plea statement warning and the plea judge's review of the same with Sandoval during the colloquy could not "save the advice that counsel gave," which the court found "nullified the constitutionally required advice about the deportation consequences of pleading guilty" and "impermissibly left Sandoval [with] the impression that deportation was a remote possibility." *Sandoval*, 249 P.3d at 1020.

The second case is *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), wherein the Fourth Circuit Court of Appeals found a plea colloquy did not cure counsel's incorrect advice regarding the immigration and deportation consequences of the defendant's guilty plea. In *Akinsade*, the defendant, a Nigerian citizen who was a lawful permanent resident of the United States, was charged with embezzlement. Akinsade pled guilty after asking his attorney about the potential immigration consequences of a guilty plea and being incorrectly assured by counsel that he could not be deported based on the single conviction.

During Akinsade's plea hearing, the plea court reviewed the civil ramifications of Akinsade's plea, as follows:

> The Court: People who are found guilty of felonies, often lose their right to vote, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can't possess firearms. Certain jobs may be denied to you.
>
> If you are on parole or probation with another system, that can be affected. *Or if you are not a citizen, you could be deported.* All of these things could be triggered by being found guilty of a felony. Do you understand that?
>
> Akinsade: Yes, Your Honor.
>
> The Court: Knowing that do you still wish to plead guilty?

> Akinsade:      Yes, Your Honor.

*Id.* (emphasis added).

On habeas review, the federal district court held that, while counsel was deficient under the first prong of *Strickland*[1] for rendering incorrect advice, Akinsade was not prejudiced because the plea court's "admonishment of the potential for deportation during the plea colloquy cured counsel's affirmative misrepresentations." *Id.* On appeal, the Fourth Circuit found the plea court's colloquy was inadequate and vacated the district court's order. Specifically, the Fourth Circuit found:

> This general and equivocal admonishment is insufficient to correct counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense. More importantly, the admonishment did not "properly inform" Akinsade of the consequence he faced by pleading guilty: mandatory deportation. Thus, Akinsade could not have known that deportation was a legally mandated consequence of his plea.

*Id.* The Fourth Circuit emphasized their decision should not be interpreted to change the role of or impose new obligations on plea judges, or suggest a plea judge "needs to be 'clairvoyant' or must 'guess' about whether a defendant has been misinformed regarding a particular consequence of a plea." *Id.* Instead, the court explained:

> When, as here, the claim raised is that of ineffective assistance of *counsel*, the overall focus must be on the prejudice arising from *counsel's* deficient performance. If a district court's admonishment so happens to correct the deficient performance then there is no prejudice; however, if there is no correction, then our scrutiny is not directed toward the district court but appropriately to the constitutional offender.

*Id.* The court further held that, in order for a plea court's colloquy to be curative, "it should address the particular issue underlying the affirmative misadvice."

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

And finally, the Supreme Court's recent decision in *Lee v. United States*, with strikingly similar facts, further supports the granting of relief to Petitioner. 137 S.Ct. 1958 (2017). Lee, a non-United States citizen, was indicted on a drug charge. The evidence against Lee was overwhelming, perhaps like it may be against Petitioner. Because a conviction seemed an almost certainty, counsel sought to negotiate a plea agreement. Lee, however, was concerned with his immigration status and repeatedly asked counsel about the risk of deportation. Counsel assured Lee that he would not be deported as a result of pleading guilty. Lee was notified soon after the guilty plea that he would be deported, and in response, Lee filed a federal habeas claim, and he lost in the federal district court and the Court of Appeals for the Sixth Circuit. Lee prevailed in the Supreme Court, and the Court's analysis provides Petitioner strong support.

*Lee* adopted the familiar *Hill v. Lockhart*[2] framework in a *Padilla* context. In part, the *Lee* majority noted the following:

> Lee . . . argues he can establish prejudice under *Hill* because he never would have accepted a guilty plea had he known that he would be deported as a result. Lee insists he would have gambled on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States. The Government responds that, since Lee had no viable defense at trial, he would almost certainly have lost and found himself still subject to deportation, with a lengthier prison sentence to boot. Lee, the Government contends, cannot show prejudice from accepting a plea where his only hope at trial was that something unexpected and unpredictable might occur that would lead to an acquittal.
>
> The Government asks that we, like the Court of Appeals below, adopt a *per se* rule that a defendant with no viable defense cannot show prejudice from the denial of his right to trial . . . . A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of conviction for its

_____

[2] 474 U.S. 52 (1985).

own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. . . .

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. . . . When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here Lee alleges that avoiding deportation was the determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.

*Id*. at 1966–67 (citations omitted). By focusing on Petitioner's decision-making, it is uncontested that he "would have rejected any plea leading to deportation." Because Petitioner's counsel provided deficient representation, we may not avoid a finding of prejudice on the basis of the likelihood of a guilty verdict, even if Petitioner is throwing a "Hail Mary."

Just as in *Lee*, we are constrained to "conclude [Petitioner] has demonstrated a 'reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59). The judgment of the PCR court is reversed.


**REVERSED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**