# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Francisco Roberto Rodriguez, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2020-000882

———————————

Appeal From Spartanburg County
G. Thomas Cooper Jr., Circuit Court Judge

———————————

Opinion No. 6087
Heard May 8, 2024 – Filed September 4, 2024

———————————

**AFFIRMED**

———————————

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Attorney General Mark Reynolds Farthing and
Assistant Attorney General Bryan TyJarris Hall, all of
Columbia, for Respondent.

———————————

**THOMAS, J.:**  In this action for post-conviction relief (PCR), Francisco R.
Rodriguez (Petitioner) argues the PCR court erred in finding he suffered no
prejudice from plea counsel's failure to advise him that entering an *Alford* plea[1]

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (allowing a defendant to plead
guilty without an admission of guilt).

would result in mandatory deportation and a permanent ban on reentry to the United States.  We affirm.

**Facts and Procedural History**

In 2016, Petitioner entered an *Alford* plea to third-degree criminal sexual conduct (CSC) with a minor.  An interpreter translated the proceedings.[2]  The only mention on the record during the plea hearing regarding immigration consequences was by the State, who informed the court at the end of the hearing that it had contacted the federal authorities and it was uncertain of the immigration consequences.  The plea court sentenced Petitioner to fifteen years in prison and ordered him to register as a sex offender.  Petitioner did not file a direct appeal; however, he filed this application for PCR, which does not raise immigration consequences.  Following an evidentiary hearing, the PCR court found plea counsel's failure to advise Petitioner that he would be deported if he entered the *Alford* plea constituted deficient performance pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010).  However, the PCR court found Petitioner was not prejudiced by this deficiency and denied relief.  We granted Petitioner's petition for a writ of certiorari.

**Standard of Review**

"In [PCR] proceedings, the burden of proof is on the applicant to prove the allegations in his application."  *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008).  "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them."  *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "We review questions of law de novo, with no deference to trial courts."  *Id.* at 180-81, 810 S.E.2d at 839.

**Law/Analysis**

Petitioner argues the PCR court erred in finding he suffered no prejudice from plea counsel's failure to advise him that entering the *Alford* plea would result in mandatory deportation and a permanent ban on reentry.  We disagree.

---

[2] Petitioner, who is from Veracruz, Mexico, speaks only Spanish.

At the PCR hearing, Petitioner testified counsel knew he was from Mexico and counsel told him it would be possible he would be deported.[3]  Petitioner testified plea counsel never explained he would be placed on the sex offender registry or what that entails.  He further testified plea counsel did not explain that a sexual crime against a child is considered a crime of moral turpitude or advise that by entering such a plea, Petitioner would "be banned completely from ever reporting legal status in the United States."

Plea counsel testified, "I told him that immigration was probably gonna come and get him when his sentence was over no matter when it ended . . . and that they would use this conviction against him as a reason to deport him."  When asked on cross-examination about whether he explained the immigration consequences that would result from the plea, plea counsel responded, "Yes, I'm sure I did.  I told him that it would be used against him in a deportation proceeding if there was one."  Plea counsel acknowledged the plea would completely bar Petitioner from ever legally entering the United States, but when asked whether Petitioner understood that by entering the plea he would not be permitted to return to raise his children, counsel responded, "I don't know if I ever told him he'd never be able to come back to the United States.  I may not have gone over that with him, but he was very much aware that the immigration court would—you know, this would be used against him and he would probably be deported."

We find the PCR court correctly found plea counsel was deficient in failing to explicitly advise Petitioner of the mandatory deportation and ban on reentry Petitioner faced if he entered this *Alford* plea.  In *Taylor v. State*, our supreme court explained, "If the deportation consequences of a particular plea are unclear or uncertain, 'a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences.'"  422 S.C. 222, 225, 810 S.E.2d 862, 863 (2018) (quoting *Padilla*, 559 U.S. at 369).  "However, where the terms of the relevant immigration statute are 'succinct, clear, and explicit' in defining the removal consequence, counsel has an 'equally clear' duty to give correct advice."  *Id.* (quoting *Padilla*, 559 U.S. at 368-69).

Here, the terms of the removal statutes are succinct, clear, and explicit in mandating Petitioner was deportable if convicted.  *See, e.g.,* 8 U.S.C.A. § 1227

---

[3] Petitioner interrupted the plea hearing eight times to ask questions and confer with his counsel.  However, none of the interruptions appear to have been regarding immigration consequences.

(a)(2)(A)(i) (providing that an alien admitted to the United States "who (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable"); 8 U.S.C.A. § 1227 (a)(2)(E)(i) ("Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.").  Thus, plea counsel had a duty to give correct advice.  *See Taylor*, 422 S.C. at 227, 810 S.E.2d 864 ("Pursuant to *Padilla*, counsel must do more than 'discuss immigration' or advise Petitioner he *might* face adverse immigration consequences.").  Because plea counsel's advice that Petitioner *might* be deported was deficient, the PCR court correctly found deficient performance.

However, the PCR court also found that although counsel was deficient for failure to inform Petitioner of the immigration consequences of his plea, Petitioner failed to prove prejudice because Petitioner "still would have taken the plea if [plea c]ounsel provided a more concrete answer regarding immigration consequences of the plea."  The PCR court found the determinative factor in Petitioner's decision to enter the *Alford* plea was a lesser sentence.  Although the PCR court's order states Petitioner "made clear the determinative factor in taking the plea was the shortened sentence, not any potential deportation consequences" and this finding is based on plea counsel's testimony rather than Petitioner's, we find evidence to support the PCR court's finding.  *See Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *Smalls*, 422 S.C. at 180, 810 S.E.2d at 839 ("We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them.").

At the plea hearing, an interpreter was present.  When the plea court asked Petitioner if he wanted to proceed to trial, Petitioner responded, "No.  I want an *Alford*."  Petitioner also affirmed he knew the plea would be treated like a guilty plea, he was receiving a beneficial result by accepting the *Alford* plea, no one forced him to plead, no one talked him into pleading, there was a substantial likelihood he would be convicted if he went to trial, and that he had plenty of time to talk with his lawyer.  There were numerous instances when Petitioner was unclear during the plea hearing; however, each time the plea court permitted Petitioner to confer with counsel.

At the PCR hearing, plea counsel testified that he explained to Petitioner what an *Alford* plea was a day or two before the plea hearing with Petitioner being engaged and discussing the sentences others with similar offenses had received. Counsel testified he discussed trial strategy with Petitioner and Petitioner told him he did not want to proceed to trial because he did not want to risk the possibility of a twenty-five-year sentence. Further, counsel testified that although Petitioner asked numerous questions during the plea hearing, he never indicated he wanted a trial. Finally, albeit insufficient under *Padilla*, counsel did discuss the possibility of immigration consequences.

Despite knowledge of the possibility of immigration consequences, Petitioner's testimony at the PCR hearing was primarily based on his other allegations of deficient performance by his plea counsel and only secondarily concerned with immigration consequences. When he was asked at the PCR hearing what relief he was seeking, he responded, "[a] new trial or a reduction of the time." The numerous interruptions during the plea hearing concerned the underlying facts and strength of the case against him, including counsel's investigation; the rights he was foregoing to plead; and one instance of explaining an *Alford* plea. None of the interruptions concerned immigration consequences. Although Petitioner's testimony supports the PCR court's finding that counsel's representation was deficient, Petitioner never testified that if counsel told him deportation was mandatory in his case he would have proceeded to trial.

In *Padilla*, the court found "constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." 559 U.S. at 360. However, the court did not have to address whether counsel's incompetence prejudiced Padilla. *Id.* ("Whether [Padilla] is entitled to relief depends on whether he has been prejudiced, a matter that we do not address."). In *Taylor*, the court found prejudice. 422 S.C. at 233-34, 810 S.E.2d at 867-68. However, in *Taylor* "it [was] uncontested that [Taylor] 'would have rejected any plea leading to deportation.'" *Id.* at 233, 810 S.E.23d at 867. Here, it is not clear that Petitioner would have rejected any plea offer leading to deportation. In our review of prejudice, we look only at whether "there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty but would have insisted on going to trial." *Id.* We find Petitioner failed to meet his burden of proving there was a reasonable probability that he would have rejected the plea offer and insisted on going to trial had he been properly advised of the resulting immigration consequences. Thus, we affirm the PCR court's order denying relief.

**AFFIRMED.**

**VERDIN, A.J., concurs.**

**MCDONALD, J., dissenting:**  While I agree with the majority that the PCR court correctly found plea counsel's failure to advise Petitioner of the deportation consequences of his *Alford* plea constituted deficient performance, I part company with the majority's affirmance of the finding that Petitioner was not prejudiced by this deficiency.  Thus, I respectfully dissent.

In his application for post-conviction relief, Petitioner claims:

> That the Applicant did not have an interpreter to explain the nature of the charge against him, his constitutional right to a jury trial, a defense, or of the exposure of time and consequence of the plea.  If the Applicant had been advised in a manner that he could understand, he would have insisted on going to trial.

Although plea counsel speaks "a little bit" of Spanish, Petitioner testified he did not fully understand everything his counsel said in their meetings leading up to his plea.[4]  Petitioner further alleged he neither understood the plea paperwork— because it was in English—nor the concept of an *Alford* plea.  Even when Petitioner asked plea counsel "what [an *Alford* plea] was" during the taking of the plea, counsel "didn't explain it," "[h]e just said to accept it."

Petitioner testified plea counsel never explained he would be placed on the sex offender registry or what that entails and "just told me that it would be possible for me to be deported."  He further claimed plea counsel did not explain that by entering the plea, Petitioner "would be banned completely from ever reporting legal status in the United States."  In my view, the repeated interruptions reflected in the plea transcript are important, as they support Petitioner's claim that he was confused throughout the proceeding.

---

[4] Plea counsel testified that while he can converse in Spanish, he "could not pass a college course in Spanish."

Plea counsel testified that he reviewed all of the discovery with Petitioner and explained the concept of an *Alford* plea. He noted they "went over an *Alford* plea because [Petitioner] said he didn't do it and wasn't gonna admit to it." Although plea counsel stated he "did explain what an *Alford* plea was," I find more significant counsel's admission that Petitioner seemed "very confused" during the plea. When asked on cross-examination about whether he explained the immigration consequences that would follow as a result of the plea, counsel replied, "Yes, I'm sure I did. I told him it would be used against him in a deportation proceeding *if there was one*." When asked whether Petitioner understood that by entering the plea he would not be permitted to return to the United States to see his children, plea counsel responded:

> Well . . . I think I had asked him if there were any—if there was anything about the children that was exceptional or unusual in any regard. And I don't think there was, but I don't know if I ever told him he'd never be able to come to the United States. I may not have gone over that with him, but he was very much aware that the immigration court would—you know, this would be used against him and he would *probably* be deported.

In *Taylor*, our supreme court explained, "If the deportation consequences of a particular plea are unclear or uncertain, 'a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences.'" 422 S.C. at 225, 810 S.E.2d at 863 (quoting *Padilla*, 559 U.S. 356 at 369). "However, where the terms of the relevant immigration statute are 'succinct, clear, and explicit' in defining the removal consequence, counsel has an 'equally clear' duty to give correct advice." *Id.* (quoting *Padilla*, 559 U.S. 356 at 368-69).

I agree with the majority that the terms of the applicable removal statutes are succinct, clear, and explicit in mandating Petitioner was deportable if convicted. But the problem here is that plea counsel himself did not appear to understand this consequence, and he admittedly did not adequately explain it to Petitioner. As the majority recognizes, the only reference to immigration consequences before the plea court was the prosecutor's brief reference to deportation at the end of the proceeding. Notably, when the State mentioned "deportation is not a real consequence unless this sentence is ninety days or more," the plea court made no inquiry as to whether Petitioner understood that *his* plea would result in mandatory deportation. *Cf. United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012)

(explaining that in order for a plea court's "admonishment to be curative, it should address the particular issue underlying the affirmative misadvice").  Thus, the conduct of the plea proceeding itself did not ameliorate the prejudice to Petitioner resulting from plea counsel's deficiency.

The PCR court found the determinative factor in Petitioner's decision to enter the *Alford* plea was a lesser sentence.[5]  I agree with the majority that this finding is likely supported by plea counsel's testimony.  Still, in light of Petitioner's clear confusion during the plea proceeding itself, there is at least a reasonable probability that Petitioner would have rejected the plea and insisted on going to trial had he been properly advised that his plea would result in mandatory deportation and a permanent ban on reentry.[6]  *See, e.g., United States v. Swaby*, 855 F.3d 233, 243 (4th Cir. 2017) (addressing prejudice in the context of *Padilla* deficient performance and finding the "likelihood of acquittal at trial is not the only factor a defendant considers, especially when the offered plea carries considerable collateral consequences.  For example [the Fourth Circuit] has found prejudice when the defendant has 'significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.'" (quoting *Akinsade*, 686 F.3d at 255)).[7]

More concerning to me, though, is the transcript of the *Alford* plea itself.  Although

_____

[5] The PCR court's order of dismissal contains an error in its determinative factor finding.  The order states, "Applicant made clear the determinative factor in taking the plea was the shortened sentence, not the potential deportation consequences."  However, the cited portion of the record supporting this finding is plea counsel's testimony in response to the State's asking whether "Applicant indicated to you [plea counsel] that he wanted to plead before he went to the hearing."

[6] Further relevant to our consideration is plea counsel's statement at the PCR hearing that "looking back, maybe I should have just taken a lot more time with him to make sure he understood that it [the *Alford* plea proceeding] wasn't a trial."

[7] Unlike the circumstances in *Taylor* and *Lee*, this was not a "Hail Mary" situation.  *Cf. Taylor*, 422 S.C. at 232-34, 810 S.E.2d at 867-68 (quoting *Lee*, 582 U.S. at 1966-67).  The State's case against Petitioner turned solely on the testimony of the minor.  And, plea counsel testified before the PCR court as to his belief "that the parents of the victim might have some type of ulterior motive to make allegations in that they're not legally in the country and they might be looking for a new visa."

Petitioner appeared to understand some of the proceeding, his eight interruptions for clarification—coupled with the admitted language barrier and lack of an interpreter for his intermittent consultations with counsel—should have alerted both plea counsel and the plea court that further inquiry was necessary to determine whether Petitioner truly understood the consequences of his plea.

Because there is a reasonable probability that Petitioner would have rejected the plea and insisted on going to trial had he been properly advised of the resulting mandatory deportation and permanent ban on reentry to the United States, I would reverse the PCR court's order denying relief and remand for a new trial.