**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 21-7566**

―――――――――――

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

PATRICK EMANUEL SUTHERLAND,

        Defendant – Appellant.

―――――――――――

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:15-cr-00225-MOC-DCK-1; 3:21-cv-00082-MOC)

―――――――――――

Argued:  March 19, 2024                        Decided:  May 31, 2024

―――――――――――

Before NIEMEYER, GREGORY, and AGEE, Circuit Judges.

―――――――――――

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge Niemeyer and Judge Gregory joined.

―――――――――――

**ARGUED:**  Amber Eve Donner, GAINOR & DONNER, Miami, Florida, for Appellant. Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Ronald Gainor, GAINOR & DONNER, Miami, Florida; Marcia J. Silvers, LAW OFFICE OF MARCIA J. SILVERS, Miami, Florida, for Appellant.  Dena J. King, United States Attorney, OFFICE OF UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

―――――――――――

AGEE, Circuit Judge:

A federal jury convicted Patrick Sutherland of three counts of filing false tax returns and one count of obstructing an official proceeding. After this Court affirmed his convictions on direct appeal, Sutherland filed a 28 U.S.C. § 2255 petition to vacate his obstruction conviction and a petition for a writ of error coram nobis to vacate his tax fraud convictions. The district court denied both petitions without holding an evidentiary hearing. Sutherland now appeals. After a careful review of the record, we affirm.

I.

For convenience, we reproduce the underlying facts as stated in this Court's decision affirming Sutherland's convictions on direct appeal:

> This case involves the defendant's attempts to avoid paying taxes, and his subsequent efforts to cover up those crimes. Sutherland owned or operated several insurance businesses that sold products out of the United States and Bermuda. He routed his international transactions th[r]ough Stewart Technology Services (STS), a Bermuda company. Defendant claims that his sister, Beverly Stewart, owned and controlled STS, but Sutherland actually managed all its day-to-day affairs. Despite allegedly owning a multi-million-dollar business, Stewart worked at the Best Western hotel in Cody, Wyoming for less than $10 an hour. At one point, she was unable to pay a $600 fee without her hotel earnings.
>
> Between 2007 and 2011, STS sent Sutherland, his wife, or companies that he owned more than $2.1 million in wire transfers. In each of the tax years 2008, 2009, and 2010, STS and Sutherland treated these wire transfers in inconsistent manners that provided Sutherland tax advantages. To wit, Sutherland treated the vast majority of the wire transfers from STS to his companies as bona fide loans or capital contributions, which ordinarily are not taxable income for their recipient. By contrast, STS treated nearly all of the wire transfers as expenses that had been paid to Sutherland. If the wire transfers were in fact expenses paid to Sutherland, as STS recorded them, then Sutherland and his companies should have reported the wire transfers

2

as taxable income. Far from reporting them as income, however, Sutherland either treated the transfers from STS to him and his wife as bona fide loans or failed to account for them in his general ledger altogether. In the end, Sutherland did not report the $2.1 million as income on his tax returns.

Sutherland's treatment of the STS transfers mirrored his treatment of other income. Indeed, the defendant seemed to think that marking income as a capital contribution or loan was a foolproof scheme. For example, three Sutherland companies—Insigne Consulting, Insigne, Inc., and XYZ Entertainment—sent almost $42,000 to Kryotech Holdings, another Sutherland company, between 2007 and 2009. The paying companies recorded each transfer as a non-taxable marketing expense, while Kryotech treated the payments as non-taxable capital contributions. The net result: none of Sutherland's companies would pay taxes on those funds. Similarly, Insigne, Inc., received more than $125,000 in taxable fees from another firm, Global Financial Synergies, between 2006 and 2010—yet Sutherland described the majority of them as nontaxable capital contributions. Come tax day, despite the millions of dollars flowing through his accounts, Sutherland reported just $88,979 of income in 2008; $16,669 in 2009; and $72,415 in 2010.

But the scheme was short lived. In April 2012, Sutherland was served with grand jury subpoenas seeking financial records from his companies, including Insigne Consulting, Insigne Financial Services, Insigne, Inc., Kryotech Holdings, and XYZ Entertainment. Just three months later, Sutherland's attorney sent to the U.S. Attorney's office a letter that purported to explain away a large number of transactions relating to the subpoenaed materials. With respect to the wire transfers from STS to Sutherland's companies, the letter said that each transfer was a loan that was contemporaneously documented by written and fully-executed loan agreements. Those agreements were attached to the letter.

In 2015, a federal grand jury indicted Sutherland for filing false returns in the tax years 2008, 2009, and 2010, in violation of 26 U.S.C. § 7206(1), and for obstructing, influencing, or impeding the 2012 grand jury investigation, or attempting to do so, in violation of 18 U.S.C. § 1512(c)(2).

The evidence at trial [in October 2016] not only outlined the financial misdeeds described above, but also demonstrated that the loan documents Sutherland sent to the U.S. Attorney's office in July 2012 had been fabricated. Read together, the documents implausibly pledged that Sutherland would give STS 120% of the proceeds of any sale of his businesses. While the documents had purportedly been signed by

3

Sutherland's sister, evidence revealed that Sutherland commonly signed documents for her. The loan documents from Sutherland, moreover, conflicted with internal accounting documents from STS (the purported lender). Finally, the government introduced documents in which Sutherland claimed to have made loan payments by transferring interests in his other businesses to STS. But these related documents were bogus and backdated. A document supposedly signed in 2011, for example, described how Sutherland's businesses had received loans from STS in 2011, 2012, and 2013. Legitimate documents do not reference potential future transactions in the past tense, just as bona fide loans do not require fake payment trails.

The jury had little trouble seeing through Sutherland's manipulations of his accounting records and attempts to fabricate loan documents to cover his tracks. It found Sutherland guilty on all charges.

*United States v. Sutherland*, 921 F.3d 421, 423–25 (4th Cir. 2019) (cleaned up).

In June 2017, Sutherland appeared before the district court for sentencing. Seeking to mitigate the U.S. Sentencing Guidelines loss calculation in his presentence report, Sutherland presented testimony from Jayne Frazier, a certified public accountant. Frazier reviewed Sutherland's tax returns for the years 2007 to 2010 and testified that Sutherland had *underreported* his income by hundreds of thousands of dollars in the relevant timeframe. Despite that fact, she testified that Sutherland's total tax liability for that period was less than the Government alleged because Sutherland failed to claim various business-expense deductions in 2008, 2009, and 2010, which, if claimed, would have reduced his taxable income for those years. Notably, however, Frazier did not independently audit Sutherland's tax returns, and her calculations were based largely on information provided by Sutherland, much of which could not be corroborated by itemized receipts or other documentation. *See, e.g.*, J.A. 1230 (Frazier testifying that her calculations included hundreds of thousands of dollars of unclaimed business expenses that were "all cash"). She

4

also stated that her income calculations for Sutherland excluded approximately half of the $2 million in transfers from STS to Sutherland's companies because it was her "understanding" that those funds came from a line of credit in favor of STS and thus would be "treated as loan advances" and not "taxable income." J.A. 1209.

The district court overruled Sutherland's objection to the presentence report's loss calculation, finding that Sutherland's "self-reported information" to Frazier "was not reliable." *Sutherland v. United States*, Nos. 3:21-cv-00082-MOC, 3:15-cr-00225-MOC-DCK-1, 2021 WL 4142672, at *5 (W.D.N.C. Sept. 10, 2021). The district court then sentenced Sutherland to a below-Guidelines term of thirty-three months' imprisonment on each of the four counts, to be served concurrently. The court also imposed one year of supervised release on each of the tax fraud counts, to be served concurrently, and three years of supervised release on the obstruction count, to run concurrently with the other terms of supervised release.

This Court subsequently affirmed Sutherland's convictions and the district court's loss calculation, *Sutherland*, 921 F.3d 421, and the Supreme Court denied certiorari, *Sutherland v. United States*, 140 S. Ct. 1106 (2020) (mem.).

In March 2019, Sutherland was released from prison and began serving his concurrent terms of supervised release. A year later, he completed his supervised release terms in connection with his tax fraud convictions.

In February 2021, just before he completed his term of supervised release on the obstruction conviction, Sutherland filed the § 2255 and coram nobis petitions now before us. The § 2255 petition targets the obstruction conviction, whereas the coram nobis petition

5

targets the tax fraud convictions.[1] In each petition, Sutherland argued that he received ineffective assistance of counsel because his trial counsel did not call his brother Phillip and a tax expert like Frazier to testify at trial. According to him, testimony from these two individuals would have been material to his defense. In particular, Sutherland claimed that Phillip's testimony would have substantially supported his claim that the transferred funds from STS were nontaxable loans, not income, and that a tax expert's testimony would have shown that either no tax or a "de minimis" tax was due for the relevant tax years. Opening Br. 20.

The district court ordered a response from the Government, which, in turn, moved to dismiss or deny the petitions.

Without first conducting an evidentiary hearing, the district court issued an order dismissing and denying the § 2255 petition and denying the coram nobis petition.

Beginning with the § 2255 petition challenging the obstruction conviction, the district court found that Sutherland had failed to properly allege how the proffered

---

[1] The reason for the separate petitions stems from Sutherland's "custody" status regarding the obstruction conviction, on the one hand, and the tax fraud convictions, on the other. When Sutherland filed both petitions in February 2021, he was still serving his term of supervised release on his obstruction conviction. And because "[a] prisoner on supervised release is considered to be 'in custody' for purposes of a § 2255 motion," *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999), § 2255 provided Sutherland with the appropriate means of collaterally attacking his obstruction conviction, *see* 28 U.S.C. § 2255(a). But since Sutherland had already completed his term of supervised release on the tax fraud convictions, he was no longer "in custody" with respect to those convictions and thus could no longer collaterally attack them under § 2255, leaving coram nobis as his sole recourse. *See Wilson v. Flaherty*, 689 F.3d 332, 339 (4th Cir. 2012) (stating that the writ of error coram nobis "affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody" (citation omitted)).

testimony, which concerned only the nature of the STS wire transfers and the extent of Sutherland's tax liability for the relevant tax years, "would have defeated the obstruction of justice charge." *Sutherland*, 2021 WL 4142672, at *7. In the district court's view, Sutherland's generic claim that "had defense counsel presented evidence creating a reasonable doubt about the government's theory that the STS Transfers were not loans, such evidence would have defeated *all* of the counts of the indictment" was "too vague and conclusory to warrant further examination." *Id.* (emphasis added) (cleaned up). Then citing its forthcoming discussion concerning the separate coram nobis petition, the district court ruled that Sutherland's "counsel's performance was not deficient in any event." *Id.* The court thus "den[ied] and dismiss[ed]" Sutherland's § 2255 petition. *Id.* at *8. And further finding that Sutherland had "not made a substantial showing of a denial of a constitutional right," the court denied a certificate of appealability. *Id.* at *10.

Turning to the coram nobis petition challenging the tax fraud convictions, the district court found that Sutherland had not demonstrated ineffective assistance of counsel and thus could not show an error "of the most fundamental character" warranting coram nobis relief. *Id.* at *8. Applying the two-prong standard under *Strickland v. Washington*, 466 U.S. 668 (1984),[2] the district court first found that the decision by Sutherland's counsel not to call Phillip or a tax expert at trial did not reflect deficient performance but rather a

---

[2] Under *Strickland*, to succeed on an ineffective assistance of counsel claim, a petitioner "must show that (1) counsel's performance fell below an objective standard of reasonableness (the performance prong); and (2) the deficient representation prejudiced the defendant (the prejudice prong)." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023) (citing *Strickland*, 466 U.S. at 687–88).

strategic decision that "was well within the bounds of reasonable professional assistance." *Id.* at \*9. The court emphasized, for example, that there were certain "risks" associated with calling either witness, including damaging cross examination, and that there was "a substantial question regarding whether Frazier's testimony would have been admissible at trial" given that it was based on unreliable "self-reported information from [Sutherland]." *Id.* The district court then went on to find that, even assuming trial counsel rendered deficient performance, Sutherland could not demonstrate any resulting prejudice under *Strickland*'s second prong. *Id.* If both witnesses testified as Sutherland claimed they would have done, the court explained, such testimony would have been insufficient to undermine confidence in the outcome of the trial. *Id.* The court therefore denied the coram nobis petition.

Sutherland timely appealed the district court's denial of the coram nobis petition and sought permission to appeal the district court's denial of the § 2255 petition.[3] As to the latter petition, we granted a certificate of appealability on the following issues:

(1)    Whether Sutherland was denied his right to effective assistance of counsel; and

(2)    Whether the district court erred when it granted the Government's motion to dismiss the § 2255 motion without first conducting an evidentiary hearing.

ECF No. 12.

Our jurisdiction over this appeal lies in 28 U.S.C. §§ 1291 and 2253(c).

---

[3] To appeal the denial of a § 2255 petition, the petitioner must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). No certificate of appealability is required for a coram nobis petition, however, so Sutherland could appeal the denial of that separate petition as of right.

II.

We begin with the § 2255 petition, which deals solely with Sutherland's obstruction conviction.

Under § 2255, "[a] prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Ordinarily, § 2255 requires a district court to "grant a prompt hearing [to] determine the issues and make findings of fact and conclusions of law with respect" to the claims. *Id.* § 2255(b). However, no hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*

We review a district court's denial of § 2255 relief de novo. *United States v. Pressley*, 990 F.3d 383, 387 (4th Cir. 2021). Where, as here, the district court denies a § 2255 petition without first conducting an evidentiary hearing, "we construe the facts in the light most favorable to the movant." *Id.* Finally, we review a district court's decision to forego an evidentiary hearing for abuse of discretion. *Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006).

Sutherland's § 2255 petition is predicated on a Sixth Amendment ineffective assistance of counsel claim. Such claims are governed by the two-prong framework set out in *Strickland*. The first prong—the performance prong—requires a petitioner to demonstrate that his attorney provided objectively unreasonable performance under "prevailing professional norms." *Strickland*, 466 U.S. at 688. On this score, the Supreme Court has emphasized that "[j]udicial scrutiny of counsel's performance must be highly

9

deferential." *Id.* at 689; *accord Cannady*, 63 F.4th at 268 (explaining that "counsel enjoys the benefit of a strong presumption that the alleged errors were actually part of a sound trial strategy" (citation omitted)). The second prong—the prejudice prong—requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability," *Strickland* instructs, "is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also id.* at 687 (stating that the prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). Absent either showing, the petitioner's ineffective assistance of counsel claim fails. *Id.* at 687.

In this case, "we need not analyze the sufficiency of counsel's performance" for purposes of Sutherland's § 2255 petition "since it is so clear that counsel's purported deficiencies did not prejudice" him. *United States v. Terry*, 366 F.3d 312, 315 (4th Cir. 2004); *see also Strickland*, 466 U.S. at 697 (stating that courts may dispose of an ineffective assistance claim based on a "lack of sufficient prejudice" without first addressing "whether counsel's performance was deficient"). Put simply, Sutherland has failed to show how the proffered testimony from Phillip and a tax expert would have in any way undermined his obstruction conviction.

According to Sutherland, Phillip would have testified that, despite having "no education, training or experience in bookkeeping or accounting," he served as the bookkeeper for Sutherland's companies and "unintentionally made numerous mistakes and omissions" in that role, including with respect to the STS wire transfers central to the tax

10

fraud convictions. Opening Br. 12. He also would have supposedly testified concerning his sister Stewart's "savvy business acumen" and that "he overheard several telephone conversations between Sutherland and Stewart discussing loans from STS to Sutherland's business entities." Opening Br. 13. As Sutherland puts it, this testimony would have "strongly supported the proposition that the subject funds were nontaxable loans and not income which was a meritorious defense to the charges." Opening Br. 8.

As for a tax expert, Sutherland claims that he or she would have testified at trial that almost half of the STS wire transfers came from a line of credit in favor of STS and that such funds were treated by STS as loans. He or she also would have allegedly testified that Sutherland failed to deduct numerous business expenses that, if claimed, would have reduced his total tax liability for the subject tax years. This testimony, Sutherland similarly contends, would have "(1) strongly supported the proposition that the subject funds were nontaxable loans and (2) provided evidence that no or only a minimal tax was due for the years at issue." Opening Br. 8.[4]

The problem for Sutherland is that none of this alleged testimony bears any relevance to the only conviction at issue in the § 2255 petition—the *obstruction* conviction. The evidence necessary to convict Sutherland of that charge depended not on the proper classification of the STS funds (i.e., nontaxable loans versus taxable income) or the extent

---

[4] To be clear, Sutherland has not produced an affidavit from either Phillip or a "tax expert" swearing as to the testimony that Sutherland says each would have offered had they testified at trial. Nonetheless, we assume as the district court did that each would have testified at trial consistent with Sutherland's claims.

11

of his tax liability, but on his submitting, through his attorney, *fabricated loan documents* to the U.S. Attorney's Office in response to grand jury subpoenas.

To secure a conviction for obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2), "[t]he government must show that the defendant (1) corruptly (2) obstructed, influenced, or impeded (3) an official proceeding, or attempted to do so. The government must also demonstrate a nexus between the obstructive act and the official proceeding[.]" *Sutherland*, 921 F.3d at 425 (cleaned up).

Here, the obstruction count of the indictment charged that Sutherland corruptly obstructed, influenced, and impeded, or attempted to do so, a federal grand jury proceeding by "providing one or more false and misleading documents in response to a subpoena issued by that Grand Jury." J.A. 23. The petit jury found Sutherland guilty of that count based on his providing fabricated loan documents to the U.S. Attorney's Office. And as we observed in rejecting Sutherland's direct appeal, that verdict was well supported by the evidence adduced at trial:

> The evidence at trial not only outlined [Sutherland's] financial misdeeds . . . but also demonstrated that *the loan documents Sutherland sent to the U.S. Attorney's office in July 2012 had been fabricated*. Read together, the documents implausibly pledged that Sutherland would give STS 120% of the proceeds of any sale of his businesses. While the documents had purportedly been signed by Sutherland's sister, evidence revealed that Sutherland commonly signed documents for her. The loan documents from Sutherland, moreover, conflicted with internal accounting documents from STS (the purported lender). Finally, the government introduced documents in which Sutherland claimed to have made loan payments by transferring interests in his other businesses to STS. But *these related documents were bogus and backdated*. A document supposedly signed in 2011, for example, described how Sutherland's businesses had received loans from STS in 2011, 2012, and 2013. Legitimate documents do not reference potential future

transactions in the past tense, just as bona fide loans do not require fake payment trails.

The jury had little trouble seeing through Sutherland's manipulations of his accounting records and *attempts to fabricate loan documents to cover his tracks*.

*Sutherland*, 921 F.3d at 424–25 (emphases added) (cleaned up).[5]

The testimony that Sutherland claims Phillip and a tax expert would have given at trial in no way bears on Sutherland's culpability as to the obstruction charge, let alone calls any of the salient record evidence into question. Indeed, (admissible) testimony from these two witnesses that (1) the STS wire transfers were really nontaxable loans as opposed to taxable income and (2) Sutherland owed less in total taxes than the Government alleged for the tax years at issue may have been relevant to the *tax fraud* counts, which were predicated on Sutherland's underreporting his income by mischaracterizing the STS wire transfers. But such testimony would *not* have implicated the free-standing obstruction charge, because that charge never hinged on whether Sutherland filed false tax returns. Instead, as we have made clear, it was premised on Sutherland's providing sham loan documents to the U.S. Attorney's Office in response to grand jury subpoenas—entirely separate, and independently unlawful, conduct. And as to *that* distinct conduct, the

---

[5] "[F]or all practical purposes," this determination by our Court on direct appeal—namely, that there was sufficient evidence for a jury to conclude that Sutherland submitted fabricated loan documents to the U.S. Attorney's Office—constitutes "the law of the case." *United States v. Fulks*, 683 F.3d 512, 521 (4th Cir. 2012). As such, it applies in full force in these collateral proceedings absent limited exceptions not satisfied here. *See id.* (discussing the "relationship between the direct and the collateral proceedings" and noting that "the latter is not designed to be a rehash of the former under a more defendant-friendly standard"); *see also United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (discussing the law of the case doctrine and its exceptions).

testimony Sutherland proffers in his § 2255 petition is silent. He makes *no* claim that either potential witness had any personal knowledge regarding the loan documents, their authenticity, or their provision to the U.S. Attorney's Office. Thus, trial counsel's failure to call those two witnesses had no prejudicial effect on Sutherland's defense with respect to the obstruction conviction.

Sutherland muses that *if* the STS wire transfers were in fact properly classified as nontaxable loans such that he did not actually underreport his taxable income and thus was not guilty of the tax fraud counts, then there would have been "no need to cover up those crimes" by presenting fraudulent loan documents to the U.S. Attorney's Office. Opening Br. 21, 26. And absent such a need to conceal any wrongdoing, Sutherland implies, he could not have been found guilty of obstructing the grand jury investigation. We reject this conjecture for the reasons we have just discussed. Regardless of Sutherland's "need to cover up" the tax fraud crimes—and indeed, regardless of his guilt of those crimes—the evidence presented at trial concerning the fraudulent nature of the loan documents he submitted to the U.S. Attorney's Office in response to the grand jury subpoenas was overwhelming and provided more than a sufficient basis for the jury to convict him of obstruction.

Absent any showing of prejudice stemming from his trial counsel's failure to call Phillip and a tax expert at trial, Sutherland cannot demonstrate ineffective assistance of counsel with respect to his obstruction conviction. The district court was therefore right to deny § 2255 relief. And given that the record on this issue is conclusive as to that petition, the district court did not abuse its discretion in foregoing an evidentiary hearing. *See* 28

14

U.S.C. § 2255(b) (stating that no evidentiary hearing is required where the record "conclusively show[s] that the prisoner is entitled to no relief"). Accordingly, we affirm the district court's judgment as to the § 2255 petition.

## III.

We next turn to Sutherland's separate coram nobis petition, which relates solely to the three tax fraud convictions.

"The ancient and rare writ of coram nobis affords a district court the authority to vacate a criminal conviction after a defendant's sentence has been completely served." *United States v. McDaniel*, 85 F.4th 176, 180 n.2 (4th Cir. 2023). It is a "remedy of last resort" and "is narrowly limited to extraordinary cases presenting circumstances compelling its use to achieve justice." *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012) (cleaned up).

To obtain this extraordinary relief, a petitioner must satisfy four elements:

(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III [of the U.S. Constitution]; and (4) the error is of the most fundamental character.

*Id.* (citation omitted).

We review a district court's denial of coram nobis relief for abuse of discretion. *McDaniel*, 85 F.4th at 182.

Although the district court below denied Sutherland's coram nobis petition solely based on its finding that Sutherland could not satisfy the fourth element, we agree with the

15

Government that we may affirm the district court's order on the alternative—and, in our view, easier—ground that Sutherland has not satisfied the second element. *See Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) ("We are . . . entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court.").

On appeal, Sutherland has made no effort to demonstrate why he could not have attacked his tax fraud convictions on ineffective assistance grounds earlier, despite the availability of § 2255 relief while he was still in custody for those convictions. His opening brief included no discussion of that essential element, or any of the other coram nobis elements. Sutherland's first mention of the coram nobis elements came in his reply brief, after the Government raised the issue in its response brief. And even then, Sutherland did not purport to explain why he could not have attacked his tax fraud convictions earlier. Instead, he asserted that this element "is not at issue" because "this Court did not identify timeliness as among the issues on appeal" in the certificate of appealability. Reply Br. 4. But the certificate of appealability matters only for purposes of the *§ 2255 petition*; it plays no role in framing the issues on appeal as to the separate coram nobis petition, the denial of which Sutherland could appeal as of right—that is, without first obtaining a certificate of appealability. *Compare* 28 U.S.C. § 2253(c)(1)(B) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."), *and id.* § 2253(c)(3) (requiring the certificate of appealability to identify the "specific issue or issues" to be addressed on appeal in connection with the § 2255 petition), *with* 28 U.S.C. § 1651 (All Writs Act

16

empowering federal courts to issue writs of error coram nobis but including no corresponding certificate of appealability requirement). Contrary to Sutherland's claim, therefore, whether valid reasons exist for not attacking the tax fraud convictions earlier is very much "at issue" in this appeal. And Sutherland's total failure to address that issue in his opening brief constitutes a waiver of any argument that he may have had regarding it. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). That waiver alone provides a sufficient basis to affirm the district court's order.

Even putting the waiver issue aside, nothing in the record before us remotely suggests that Sutherland had valid reasons for not attacking his tax fraud convictions earlier by way of a § 2255 petition while he was still in custody for those convictions. Critically, the facts that form the basis of his ineffective assistance of counsel claim were facts that Sutherland knew as early as trial in October 2016 and as late as sentencing in June 2017. Specifically, he knew that neither witness had been called to testify at trial. And he knew that the testimony of each was potentially relevant to his defense: Phillip was available and expected to testify at trial until the last moment and a tax expert testified at his sentencing hearing. Despite that knowledge, Sutherland never challenged his tax fraud convictions on the basis that counsel was ineffective for failing to call these witnesses at any point after his convictions were final and before he was released from custody for those convictions in March 2020. Instead, he waited until February 2021, nearly a year after he was released from custody when § 2255 relief was no longer available, before lodging such a challenge.

17

Such circumstances bear no resemblance to those in which this Court has found the second coram nobis element satisfied. *See, e.g.*, *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (finding that petitioner's "reason for not launching an earlier attack on his conviction [was] valid" because it was based on a Supreme Court decision that had been "recently rendered"); *McDaniel*, 85 F.4th at 183 ("The second requirement — timeliness — is also satisfied because McDaniel sought relief less than a year after the Supreme Court's *Johnson* decision was rendered[.]"); *Akinsade*, 686 F.3d at 252 (finding the second coram nobis element satisfied where the petitioner "had no reason to challenge the conviction" earlier "as his attorney's advice, up to that point in time, appeared accurate").

What's more, even after being alerted to this issue on appeal, Sutherland still has not provided any valid explanation for the delay in attacking the tax fraud convictions on ineffective assistance grounds. Rather, both in his reply brief and at oral argument, Sutherland merely asserted that "there is no deadline to file a petition for coram nobis." Reply Br. 7; *accord* Reply Br. at 4 ("[T]he time for filing a coram nobis petition is not subject to a specific statute of limitations."). That may be true, but it is also beside the point. The absence of a formal "deadline" for filing a coram nobis petition does not relieve a petitioner of his burden to affirmatively demonstrate that "valid reasons exist for not attacking the conviction earlier." *Akinsade*, 686 F.3d at 252.[6]

---

[6] Sutherland also speculates that filing a § 2255 petition would have been premature given the pendency of his direct appeal. But as the Government notes, there is no jurisdictional bar to filing a § 2255 petition during the pendency of a direct appeal. *See United States v. Prows*, 448 F.3d 1223, 1228 (10th Cir. 2006); *United States v. Rashid*, 546 F. App'x 234, 235 (4th Cir. 2013) (per curiam). Thus, Sutherland could have filed a § 2255 (Continued)

18

In sum, therefore, the record reveals that Sutherland had all the information he needed to challenge his tax fraud convictions in a § 2255 petition while he was still in custody for those convictions. Yet he waited nearly a year after his release from custody to bring any challenge with no legitimate explanation for the delay. Consequently, even had he not waived the issue, Sutherland's failure to provide "valid reasons . . . for not attacking the [tax fraud convictions] earlier," *id.*, would foreclose any entitlement to the "'extraordinary' remedy of coram nobis relief," *Bereano*, 706 F.3d at 579.

## IV.

For these reasons, we affirm the district court's order below.

*AFFIRMED*

---

petition even while his direct appeal was pending and simply moved to stay the § 2255 proceedings pending the resolution of the direct appeal. In any event, moreover, Sutherland was still in custody for the tax fraud convictions when the Supreme Court denied certiorari in his direct appeal, meaning that he did in fact have the opportunity to file a § 2255 petition after his direct appeal had concluded. But, without explanation, he let that opportunity pass him by.