**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-6510**

———————

UNITED STATES OF AMERICA,

> Plaintiff – Appellee,

> v.

SERGIO CARRILLO MURILLO,

> Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:16-cr-00073-AJT-2)

———————

ARGUED:  October 31, 2024                    Decided:  March 5, 2026

———————

Before WILKINSON, KING, and THACKER, Circuit Judges.

———————

Affirmed by published opinion.  Judge King wrote the majority opinion, in which Judge Wilkinson joined.  Judge Thacker wrote a dissenting opinion.

———————

**ARGUED:**  Stephen Walter Spurgin, SPURGIN LAW OFFICE, El Paso, Texas, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

———————

KING, Circuit Judge:

This is the second appeal to this Court in these 28 U.S.C. § 2255 proceedings by defendant Sergio Carrillo Murillo, who uses the surname "Carrillo." The proceedings began in September 2017, when Carrillo filed his § 2255 motion in the Eastern District of Virginia, seeking to vacate the conviction resulting from his June 2016 guilty plea to a 21 U.S.C. § 846 offense of conspiracy to distribute cocaine. Because that offense constitutes an "aggravated felony" under the Immigration and Nationality Act, and because Carrillo was a lawful permanent resident but not a citizen of the United States, the conviction rendered him subject to mandatory deportation from this country. *See Lee v. United States*, 582 U.S. 357, 361-62 (2017) (observing that "a noncitizen convicted of such an ['aggravated felony' under the Immigration and Nationality Act] is subject to mandatory deportation" (citing 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii))). By his § 2255 motion, Carrillo asserted a Sixth Amendment ineffective assistance of counsel claim and alleged that his criminal defense lawyer deficiently and prejudicially failed to advise him that he would be subject to mandatory deportation to his native Mexico because of his guilty plea. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that an ineffective assistance claim requires showings "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense").

In the previous appeal, we reviewed the district court's rejection of Carrillo's ineffective assistance claim and denial of his § 2255 motion on the ground that he failed to demonstrate *Strickland* prejudice. *See United States v. Carrillo Murillo*, 927 F.3d 808 (4th Cir. 2019) ("*Carrillo Murillo I*"). Based on our conclusion that Carrillo did demonstrate

2

*Strickland* prejudice, we reversed the district court's judgment. And because the district court had not considered whether Carrillo established *Strickland* deficient performance, we remanded for the court to decide that issue in the first instance.

On remand, the district court again rejected Carrillo's ineffective assistance claim and denied his § 2255 motion, this time on the ground that he failed to establish *Strickland* deficient performance. In this resultant appeal, as explained herein, we are now satisfied to affirm.

I.

A.

In February 2016, Carrillo and a coconspirator transported a kilogram of cocaine into Virginia, where they sold the drugs to a confidential informant who recorded the transaction while law enforcement officers observed it. Carillo was promptly arrested and then charged in March 2016 by the grand jury in the Eastern District of Virginia with the 21 U.S.C. § 846 cocaine conspiracy offense to which he later pleaded guilty, plus a 21 U.S.C. § 841(a)(1) offense of possession of cocaine with intent to distribute. Carrillo retained criminal defense lawyer Katherine Martell, who negotiated a plea agreement under which the government agreed to drop the § 841(a)(1) charge in exchange for Carrillo's guilty plea to the § 846 charge, allowing him to avoid a mandatory minimum five-year sentence.

Although there were immigration-related provisions in a draft of the plea agreement that would have required Carrillo to, inter alia, refrain from contesting his removal from

the United States and waive his rights to apply for asylum and other such relief, Martell negotiated the omission of those adverse provisions from the final version of the plea agreement at Carrillo's request. Carrillo agreed, however, to a provision of the final plea agreement entitled "Impact of Guilty Plea on Immigration Status," which included an affirmation "that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States." *See United States v. Carrillo Murillo*, No. 1:16-cr-00073, ¶ 19 (E.D. Va. June 21, 2016), ECF No. 47.

During the June 2016 plea hearing, both the district court and Martell referred to Carrillo's deportation as a "[p]ossibility" and something that "may" occur as a result of his guilty plea. *See* J.A. 19, 24.[1] Upon confirming that Carrillo understood he may be deported — and finding that Carrillo was competent to enter his plea and that the plea was knowing, voluntary, and supported by the facts — the court accepted the plea. Thereafter, in September 2016, the court sentenced Carrillo to 24 months in prison. According to Carrillo, he learned several months later that he would be deported upon completion of his sentence.

Carrillo proceeded to file his 28 U.S.C. § 2255 motion in September 2017, asserting his Sixth Amendment ineffective assistance of counsel claim and seeking vacatur of his conviction on the premise that Martell deficiently and prejudicially failed to advise him

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in the present appeal, rather than the prior one.

4

that his guilty plea would render him subject to mandatory deportation.[2] Carrillo proffered evidence including affidavits of several family members and his own declaration under penalty of perjury. At the direction of the district court, Martell submitted a declaration, also under penalty of perjury, in response.

In June 2018, without conducting an evidentiary hearing, the district court entered its Order rejecting Carrillo's ineffective assistance claim and denying his § 2255 motion on the ground that he failed to demonstrate *Strickland* prejudice. *See United States v. Carrillo Murillo*, No. 1:16-cr-00073, at 5 (E.D. Va. June 26, 2018), ECF No. 98 (the "Initial Order") (resolving that "[t]he record as a whole conclusively establishes that [Carrillo] is not entitled to the relief sought," rendering an evidentiary hearing unnecessary under 28 U.S.C. § 2255(b)). The court invoked Carrillo's affirmation in his plea agreement "that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States." *Id.* at 6. As the court saw it, that affirmation precluded Carrillo from making the necessary showing of "a reasonable probability that, but for counsel's error[s], he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 4-6 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Additionally, the court faulted Carrillo for failing to show "that it would have been rational under the circumstances to

---

[2] As an additional theory of ineffective assistance, Carrillo alleged that Martell deficiently and prejudicially failed to attempt to negotiate a plea agreement without the mandatory deportation consequences. Because he has since abandoned that theory, we do not further discuss it herein.

reject the plea offer that did not subject him to a mandatory five-year sentence." *Id.* at 5-6 (addressing Carrillo's obligation to "convince the court" that rejecting the plea offer "would have been rational under the circumstances" (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010))).

In early July 2018, Carrillo filed motions in the district court to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) and for a certificate of appealability under 28 U.S.C. § 2253(c). The court promptly denied Carrillo's Rule 59(e) motion, now characterizing it as "[d]ispositive" of the *Strickland* prejudice issue "that [Carrillo's] contention — that he would not have pleaded guilty had he known the immigration consequences — is fundamentally inconsistent with his acknowledgment in his Plea Agreement that 'defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence[] is the defendant's automatic removal from the United States.'" *See United States v. Carrillo Murillo*, No. 1:16-cr-00073, at 5-6 (E.D. Va. July 11, 2018), ECF No. 102 (the "Reconsideration Order"). Nonetheless, the court granted the requested § 2253(c) certificate of appealability, specifying that Carrillo made a substantial showing of the denial of a constitutional right on issues including "whether [his] Plea Agreement has the dispositive effect the Court attributes to it." *Id.* at 6.

## B.

Carrillo then appealed to this Court, challenging the district court's rejection of his ineffective assistance of counsel claim and denial of his 28 U.S.C. § 2255 motion pursuant to the Initial and Reconsideration Orders. By our *Carrillo Murillo I* decision of June 2019,

6

we concluded — contrary to the district court — that Carrillo demonstrated *Strickland* prejudice. *See* 927 F.3d at 815. Consequently, we reversed the district court's judgment and remanded for the court to decide in the first instance whether Carrillo established *Strickland* deficient performance. *Id.*[3]

Our review in *Carrillo Murillo I* of the district court's denial of Carrillo's § 2255 motion without an evidentiary hearing was de novo. *See* 927 F.3d at 815 (citing *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010)). We were obliged to resolve any factual ambiguities in the light most favorable to Carrillo. *Id.* (citing *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007)). And we formulated the question before us with respect to *Strickland* prejudice as being whether Carrillo "point[ed] to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.* at 816.

In our *Strickland* prejudice analysis, we determined "that the district court erred by giving dispositive weight to limited language from [Carrillo's] plea agreement," i.e., the affirmation "that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States." *See Carrillo Murillo I*, 927 F.3d at 816. We specified that rather than deeming "that single line dispositive," the district court should

---

[3] Largely relying on Carrillo's plea agreement, a dissenting panel member in *Carrillo Murillo I* advocated affirming the district court on the premise that Carrillo failed to show both deficient performance and prejudice under *Strickland*. *See* 927 F.3d at 819-24 (King, J., dissenting).

have "weigh[ed] evidence that [Carrillo] would have rejected the plea agreement had he known it carried a consequence of mandatory deportation against the evidence that [he] would have accepted it nonetheless." *Id.* (internal quotation marks omitted).

Balancing the evidence in the record before us, we concluded that "the evidence demonstrates a reasonable probability that, had [Carrillo] known the true and certain extent of the consequences of his guilty plea, he would have refused it." *See Carrillo Murillo I*, 927 F.3d at 819. In so concluding, we observed that Carrillo "need not demonstrate that rejecting the plea agreement was 'the best objective strategy or even an attractive option'"; instead, "[h]e need only demonstrate that, from the perspective of a reasonable person in his position, rejecting the plea agreement would have been 'rational.'" *Id.* at 817 (quoting *United States v. Swaby*, 855 F.3d 233, 244 (4th Cir. 2017)). We further recognized that deportation is often "an integral" and sometimes even "the most important part" of a noncitizen defendant's potential penalty, such that "preserving [the defendant's] right to remain in the United States may be more important to the [defendant] than any potential jail sentence." *Id.* at 817-18 (quoting *Padilla*, 559 U.S. at 364, 368).

From there, we specified that "[t]he record here leaves little doubt that avoiding deportation was [Carrillo's] main priority." *See Carrillo Murillo I*, 927 F.3d at 818. We premised that determination on evidence that included the following: (1) Carrillo had "lived in the United States since he was seven years old"; (2) "[h]is family and his life are here in the United States"; (3) he "retained Martell because he believed she had immigration experience," as "Martell held herself out as being uniquely experienced in matters of immigration"; (4) "Martell acknowledged that she and [Carrillo] discussed

8

immigration extensively, that [Carrillo] 'expressed his desire to fight his immigration case,' and that she informed [Carrillo] that he had to 'fight his case' in immigration court"; and (5) Carrillo "endeavored to retain his immigration-related rights" by having Martell negotiate the omission from the final version of the plea agreement adverse immigration-related provisions contained in an earlier draft. *Id.* (quoting J.A. 101). Additionally, we credited Carrillo's assertion that "[i]f [he] had known that by pleading guilty [he] would be deported from this country, [he] would have asked for a jury trial and tried to win [his] case even if the chances of winning might be small and [he] might get more prison time." *Id.* (alterations in original) (quoting J.A. 68).

Addressing the plea agreement, we highlighted "the equivocal phrases 'may entail' and 'even if'" in its affirmation "that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States." *See Carrillo Murillo I*, 927 F.3d at 818. We discerned that such language does "not suggest that *mandatory* deportation would *not* have changed [Carrillo's] mind." *Id.* at 819. And we accepted that "[o]f course [Carrillo] was willing to sign a plea agreement that said he 'wants to plead guilty regardless of any immigration consequences' when he had been told — multiple times — that immigration consequences were merely a 'possibility.'" *Id.* In that regard, we observed that the district court advised Carrillo during the June 2016 plea hearing only that he "'may be deported'" and that the court's warning "came moments after Martell stated on the record that [Carrillo] faced merely a '[p]ossibility' of deportation." *Id.* (second alteration in original) (quoting J.A. 19, 24).

9

Finally, we concluded that "the district court's warning that [Carrillo] 'may be deported' was insufficient to cure Martell's misadvice that his crime was not a categorically deportable offense," in that the warning "was 'general and equivocal.'" *See Carrillo Murillo I*, 927 F.3d at 819 (quoting *United States v. Akinsade*, 686 F.3d 248, 250 (4th Cir. 2012)). We also specified that "[t]he balance of evidence here weighs in favor of [Carrillo]," as "[t]he qualified statements from [Carrillo's] plea agreement and equivocal affirmations at his plea hearing do not outweigh the evidence that [his] main priority was remaining in this country with his family." *Id.*

In analyzing *Strickland* prejudice, we assessed the prejudicial effect of what Carrillo alleged to be *Strickland* deficient performance: Martell's failure to inform him that he would be subject to mandatory deportation because of his guilty plea. We described this in various ways, including that Martell advised Carrillo that "deportation was a mere possibility that he could fight in immigration court," but "was wrong" in doing so, given that "a noncitizen convicted of [an 'aggravated felony' under the Immigration and Nationality Act] is subject to *mandatory* deportation"; that Martell left Carrillo without a "full[] underst[anding]" of "the immigration implications of his guilty plea" and their "true and certain extent"; and that Martell provided to Carrillo "misadvice that his crime was not a categorically deportable offense." *See Carrillo Murillo I*, 927 F.3d at 811, 815, 819.

Significantly, however, we did not determine whether Carrillo actually established *Strickland* deficient performance. Rather, we remanded for the district court to assess and decide that issue in the first instance, with the following explanation and instructions:

10

> Because the district court did not consider whether [Carrillo's] attorney's performance was deficient, we decline to address the issue. Instead, the district court should consider it on remand. In this regard, we are confident our current precedent sheds sufficient light on the appropriate standard. *See United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) ("Effective representation by counsel requires that counsel provide correct advice when the deportation consequences are clear.").

*See Carrillo Murillo I*, 927 F.3d at 815.

### C.

### 1.

On remand, in August 2022, the district court conducted the first and only evidentiary hearing in these 28 U.S.C. § 2255 proceedings. Carrillo did not appear at the hearing, as he had been deported to his native Mexico after completing his prison sentence in November 2017. Two witnesses were called at the hearing, both by Carrillo's postconviction counsel. Those witnesses were Carrillo's former criminal defense lawyer Martell, plus an attorney named James Reyes who had been practicing immigration law with Martell's firm at the time of Carrillo's June 2016 guilty plea and who recounted speaking with Martell (but not Carrillo) about the immigration consequences in Carrillo's case. Carrillo also submitted various records of his court and immigration proceedings. Otherwise, Carrillo relied on the evidence that had previously been proffered in support of and in response to his § 2255 motion, including the affidavits of his family members, his own declaration, and Martell's declaration.

The parties gave closing arguments during the August 2022 hearing and submitted post-hearing supplemental briefings to the district court. The crux of Carrillo's theory of *Strickland* deficient performance was that Martell deficiently failed to advise him that, as

11

a result of his guilty plea, he would be subject to "mandatory deportation" or "presumptively mandatory deportation" under the Immigration and Nationality Act, *see* 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii), and would be statutorily ineligible for the discretionary relief of cancellation of removal, *see id.* § 1229b(a)(3). Carrillo contended that Martell should have informed him of those "drastic immigration consequences of the plea" because they were both "clear" and "certain." *See* J.A. 323, 325 (invoking the Supreme Court's 2010 ruling in *Padilla*, *see* 559 U.S. at 369, that where "the deportation consequences of a particular plea are unclear or uncertain," a criminal defense lawyer "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences," but where "the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear").

In his arguments, Carrillo specified that Martell was constitutionally required to advise him that he would, in fact, be found deportable (meaning ineligible for any relief from deportation) — not that he would, in fact, be deported. *See* J.A. 294-97. On the one hand, with respect to the alleged certainty that he would be found deportable, Carrillo acknowledged that a noncitizen with an aggravated felony conviction like his could yet be eligible for "other relief," such as having the immigration case reopened when the home country experiences a civil war or invasion. *Id.* at 294; *see also id.* at 288 (identifying being a crime victim and cooperating in a criminal investigation or prosecution as other potential paths to relief). Carrillo insisted, however, that a finding of his deportability was inevitable because "no one has identified any [other relief for which he might have qualified]." *Id.* at 294. In the words of Carrillo's counsel: "The fact of the matter is there

12

was zero relief for Sergio Carrillo Murillo. And that is a clear certainty in this particular case based on these facts." *Id.* at 288.

On the other hand, with respect to the confessed lack of certainty that Carrillo would then be deported, his counsel recognized that "it's the executive's prerogative whether to actually remove a human being from the United States." *See* J.A. 295. Because of the government's discretion to execute a deportation, counsel admitted that "it is 100 percent impossible for someone in my position to tell someone [like Carrillo] that you will be deported." *Id.*

For its part, the government maintained that Martell rendered constitutionally sufficient representation based on evidence that she conferred with Reyes about the immigration consequences of Carrillo's case; correctly informed Carrillo that he would be "deportable," "removable," and subject to deportation proceedings upon completion of his sentence; and negotiated the omission of adverse immigration-related provisions from the final plea agreement. The government also pointed to Reyes's hearing testimony suggesting that he would be "cautious not to speak in 'absolutes'" and instead would "give most of his clients the exact advice Ms. Martell gave [Carrillo]," along with Martell's hearing testimony indicating that "[s]he did not say that [Carrillo] would certainly be removed from the United States, because in her experience many clients with similar convictions ended up staying in the country due to agreements with the government and other reasons." *See* J.A. 309-10.

13

2.

By its Order of May 2023, the district court concluded that Carrillo failed to establish *Strickland* deficient performance and thus again rejected his ineffective assistance claim and denied his § 2255 motion. *See United States v. Carrillo Murillo*, No. 1:16-cr-00073 (E.D. Va. May 12, 2023), ECF No. 135 (the "Remand Order"). The court rendered the following findings of fact in the Remand Order, premised "on the evidence presented, and the credibility of the witnesses and witness statements":

> [B]efore his guilty plea, Martell did not tell [Carrillo] that as a result of his guilty plea, he would, in fact, be deported, that he was subject to "mandatory deportation" or "presumptively mandatory deportation" or ineligible for cancellation of removal. She also did not tell [Carrillo] or his family that [Carrillo] would not, in fact, be deported. Rather, Martell told [Carrillo] that he was "deportable" and "removable" and that he would be subject to immigration deportation proceedings after serving his sentence.

*Id.* at 12. Additionally, the court observed that "the ultimate outcome of deportation proceedings cannot be predicted with certainty." *Id.* at 17. For support, the court cited, inter alia, Carrillo's counsel's acknowledgment that "it's the executive's prerogative whether [to] actually remove[] a human being from the United States." *Id.* at 17 n.14 (quoting J.A. 295). The court also credited Reyes's hearing testimony, on examination by the government, "that because of the uncertainties attendant postconviction immigration proceedings, he would not tell someone in [Carrillo's] position that he was 'absolutely' deportable." *Id.*[4]

---

[4] As reflected in the Remand Order, Reyes testified that he would not advise a client in Carrillo's position either that the client was "absolutely" deportable or that the client would "absolutely" be deported. *See* Remand Order 12 (recounting Reyes's testimony (Continued)

14

Importantly, the district court considered authorities that appeared in *Carrillo Murillo I* — particularly the Supreme Court's *Padilla* decision and our Court's decisions in *Swaby* and *Akinsade* — but resolved that "[t]his case presents fundamentally different facts." *See* Remand Order 12-14 (distinguishing *Padilla* and *Swaby*); *see also id.* at 15 n.10 (same for *Akinsade*). According to the district court, the question herein — not squarely answered by *Padilla*, *Swaby*, and *Akinsade* — is "whether what Martell said to [Carrillo], as reflected in the Court's findings, was constitutionally sufficient as 'reasonable[] under prevailing professional norms,'" *id.* at 12 (alteration in original) (quoting *Strickland*, 466 U.S. at 688), or "whether there were necessarily other consequences of his guilty plea sufficiently 'succinct and straightforward' to constitutionally require their mention," *id.* at 15-16 (quoting *Padilla*, 559 U.S. at 369). Put another way by the court:

> Whether Martell's advice was constitutionally adequate reduces to whether the immigration consequences were so clear, succinct and straightforward that she was constitutionally required to tell him that he would, in fact, be deported, or at least provide a more fulsome description of those immigration consequences other than that his offense made him "deportable," "removable," and subject to deportation proceedings upon completion of his sentence.

*Id.* at 14 (citation modified).

---

"that he would explain to a client in [Carrillo's] position that there was a high likelihood of deportation, but . . . would not tell [the] client that they would absolutely be deported" or "'that they would absolutely be deportable'" (quoting J.A. 278)). Reyes further testified: "[I]n the immigration world, there are always some people with . . . convictions that you are shocked that they're still here; they would technically normally be deportable. For some reason or other, they're still out in society[,] maybe as a legal permanent resident." *Id.* at 12 n.8 (quoting J.A. 276).

Ultimately, the district court concluded that — given the "complexities and the uncertainties attendant the immigration process" — "Martell was not constitutionally required to provide advice beyond what was provided." *See* Remand Order 17-19 (citing various persuasive authorities). That is, the court determined that Martell satisfied her constitutional obligations by informing Carrillo that his guilty plea would render him "deportable," "removable," and subject to deportation proceedings upon completion of his sentence. According to the court, Martell was not constitutionally required to advise Carrillo that he would be subject to "mandatory deportation" or "presumptively mandatory deportation"; that he would be ineligible for cancellation of removal; or that it was a certainty that he would be either found deportable or be deported. The court therefore rejected Carrillo's ineffective assistance claim and denied his § 2255 motion for failure to prove *Strickland* deficient performance. *Id.* at 19 (summarizing that Carrillo "has failed to establish that he did not receive constitutionally adequate representation in connection with his guilty plea").[5]

---

[5] Notably, the government had urged the district court to revisit the issue of *Strickland* prejudice in the remand proceedings, notwithstanding this Court's *Carrillo Murillo I* decision. *See* J.A. 308 (asserting that Martell's hearing testimony "revealed information the Fourth Circuit did not have in the previously submitted affidavits and declarations" and "firmly re-established [Carrillo] suffered no prejudice"). But having concluded that Carrillo failed to prove *Strickland* deficient performance, the district court declined to revisit the prejudice issue or assess whether it even could have been appropriate to do so. *See* Remand Order 5 n.3.

* * *

At the conclusion of the Remand Order, the district court granted Carrillo another 28 U.S.C. § 2253(c) certificate of appealability, now on the broad issue of "whether [he] received effective assistance of counsel." *See* Remand Order 19. Carrillo then timely noted this appeal from the Remand Order, and we possess jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## II.

Where a district court has denied a 28 U.S.C. § 2255 motion after conducting an evidentiary hearing, we review the court's findings of fact for clear error and its legal conclusions de novo. *See United States v. Stitt*, 552 F.3d 345, 350 (4th Cir. 2008). We also review de novo mixed questions of law and fact, including the question presented by a Sixth Amendment ineffective assistance of counsel claim of whether counsel's performance was constitutionally deficient. *See United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2010).

## III.

As previously explained, under the Supreme Court's seminal decision in *Strickland v. Washington*, a Sixth Amendment ineffective assistance of counsel claim requires showings "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *See* 466 U.S. 668, 687 (1984). In Carrillo's prior appeal, by our decision in *Carrillo Murillo I,* we ruled that Carrillo demonstrated *Strickland* prejudice,

17

reversed the district court's judgment to the contrary, and remanded for the court to assess and decide in the first instance whether he established *Strickland* deficient performance. *See* 927 F.3d 808, 815 (4th Cir. 2019). The issue before us in this appeal is whether the court properly determined in its Remand Order that he did not.

Without contesting the district court's findings of fact as being clearly erroneous, Carrillo challenges the Remand Order on three grounds. First, he contends that *Carrillo Murillo I*'s ruling that he demonstrated *Strickland* prejudice necessitates a ruling that he also established *Strickland* deficient performance. Second, Carrillo maintains that the facts of this case are not materially distinguishable from the facts of a Fourth Circuit precedent in which deficient performance was ascertained, such that deficient performance must also be recognized here. And third, he insists that he established deficient performance in any event. We address — and reject — these arguments in turn.

A.

To start, Carrillo contends that our determination in *Carrillo Murillo I* that he demonstrated *Strickland* prejudice means that he "necessarily proved" *Strickland* deficient performance. *See* Br. of Appellant 11. Of course, deficient performance and prejudice "are separate and distinct elements of an ineffective assistance claim." *See Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994) (citing *Strickland*, 466 U.S. at 687). Moreover, although *Strickland* "discussed the performance component of an ineffectiveness claim prior to the prejudice component," the Supreme Court counseled therein that "there is no reason for a court deciding an ineffective assistance claim to

18

approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *See* 466 U.S. at 697.

Consequently, a court may assume deficient performance and proceed directly to a prejudice analysis. *See, e.g.*, *United States v. Rangel*, 781 F.3d 736, 746 (4th Cir. 2015); *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013). That is essentially what we did in *Carrillo Murillo I*, in that we assessed the prejudicial effect of what Carrillo alleged to be deficient performance, but expressly "decline[d] to address the [deficient performance] issue" and instructed "the district court [to] consider it on remand." *See* 927 F.3d at 815.

The point Carrillo fails to appreciate is that it is possible for a defendant to be prejudiced by his counsel's performance without that performance being constitutionally deficient. For example, the Third Circuit has concluded that a defendant was prejudiced by his counsel's failure to raise on direct appeal a claim that the trial court did not personally address him during sentencing, as required by Federal Rule of Criminal Procedure 32. *See United States v. Scripps*, 961 F.3d 626, 634 (3d Cir. 2020). Prejudice existed, the court of appeals explained, because there was "a reasonable probability that we would have remanded for resentencing if counsel had raised the Rule 32 error on direct appeal." *Id.* As for deficient performance, however, the court recognized that "without understanding counsel's reasons for failing to raise this error on appeal, we cannot categorically conclude that [counsel's performance was constitutionally inadequate]." *Id.* The court also observed that it would be improper to "presume that counsel's failure to raise the Rule 32 error on appeal automatically constitutes deficient performance," in that "courts must 'indulge a strong presumption' that counsel was effective and may only find

19

otherwise if the defendant 'overcome[s] the presumption that . . . the challenged action might be considered sound trial strategy.'" *Id.* (alterations in original) (quoting *Strickland*, 466 U.S. at 689). Thus, the court remanded for further proceedings, including an evidentiary hearing, on the deficient performance issue. *Id.* at 634-35.

Similarly, we discerned *Strickland* prejudice in *Carrillo Murillo I* but remanded for the district court to decide in the first instance whether there was *Strickland* deficient performance. Contrary to Carrillo's contention, *Carrillo Murillo I* did not somehow require the district court to rule that deficient performance was established. Indeed, there would have been no reason to remand if the result were preordained. Rather, the court was free to rule on the deficient performance issue as it saw fit, which it did after properly conducting an evidentiary hearing and affording the parties ample opportunities to present their arguments.

## B.

Next, Carrillo maintains that *Strickland* deficient performance must be recognized here because this Court previously ascertained deficient performance — on what Carrillo characterizes as being materially indistinguishable facts — in *United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017). It is *Swaby* that we highlighted in our remand instructions in *Carrillo Murillo I*, explaining that "we are confident our current precedent sheds sufficient light on the appropriate standard" and invoking *Swaby* for the proposition that "'[e]ffective representation by counsel requires that counsel provide correct advice when the deportation consequences are clear.'" *See Carrillo Murillo I*, 927 F.3d at 815 (quoting *Swaby*, 855 F.3d at 240).

20

In *Swaby*, the defendant noncitizen's criminal defense lawyer sought "to avoid [Swaby's] conviction of an aggravated felony," in recognition that such a conviction would render him subject to mandatory deportation. *See* 855 F.3d at 237 (explaining that "deportation is so likely for those convicted of an aggravated felony that it is akin to mandatory deportation" (internal quotation marks omitted)). With the assistance of an immigration attorney, the criminal defense lawyer identified an offense that she thought did not qualify as an aggravated felony and negotiated a plea agreement under which Swaby pleaded guilty to that crime. *Id.* "Unfortunately," counsel's statutory interpretation was mistaken and thus "Swaby unknowingly pleaded to an aggravated felony that rendered him automatically deportable." *Id.*

Based on those facts, we concluded in *Swaby* that the defendant proved *Strickland* deficient performance. *See* 855 F.3d at 240. Specifically, we ruled that counsel failed to "provide correct advice when the deportation consequences are clear," in that counsel "only needed to read the correct version of the statute to determine that the crime was an aggravated felony," but misinformed Swaby that the offense was not an aggravated felony and therefore "that the plea agreement presented only a risk, but not a certainty, of deportation." *Id*.

As Carrillo would have it, the facts of this case equate to those of *Swaby*. *See* Br. of Appellant 15 (asserting that "[e]xactly as in *Swaby*, [he] unknowingly pled guilty to a crime that rendered him automatically deportable"). Like the district court, however, we disagree. *See* Remand Order 13 (observing that "[t]his case presents fundamentally different facts than . . . *Swaby*"). Of significant difference, *Swaby* involved counsel's

21

patently incorrect advice that the defendant could avoid being subject to mandatory deportation for the charged offense by pleading guilty to a different crime mistakenly thought to carry lesser immigration consequences.

We further recognize, as did the district court, that other authorities discussed in *Carillo Murillo I* also involve materially distinguishable facts. *See* Remand Order 12-14, 15 n.10. Those include this Court's decision in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), and the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Counsel in *Akinsade* at least twice misadvised the noncitizen defendant that he could not be deported because of pleading guilty to the charged offense, and the government did not contest deficient performance. *See* 686 F.3d at 250, 251 n.3. Similarly, counsel in *Padilla* both failed to give the noncitizen defendant any notice "that his plea would make him eligible for deportation" and "provided him false assurance that his conviction would not result in his removal from this country." *See* 559 U.S. at 368. The Supreme Court therefore specified that *Padilla* was "not a hard case in which to find deficiency." *Id.*

Here, by contrast, Martell did not impart any incorrect advice or fail to notify Carrillo that there would be deportation consequences to his guilty plea. Rather, Martell correctly informed Carrillo that because of his guilty plea, he would be "deportable," "removable," and subject to deportation proceedings once he completed his sentence. The question in this case is whether that advice — though correct — was constitutionally deficient, in that there was more information Martell should have provided. Neither *Swaby*,

22

nor *Akinsade* or *Padilla*, squarely answers this question because each involved materially distinguishable facts.

C.

Finally, Carrillo contends that he established deficient performance in any event. That is so, according to Carrillo, because Martell indeed was constitutionally required to provide more immigration advice than she gave. On appeal, Carrillo states his position thusly: "To provide constitutionally adequate representation, Attorney Martell needed to advise [him] that when he pleaded guilty to an aggravated felony, he would be subject to mandatory deportation" or "presumptively mandatory deportation." *See* Br. of Appellant 18, 23 (emphasis removed). Carrillo also suggests that Martell was required to notify him that he would, in fact, be found deportable, as it was clear there was no relief from deportation for which he might have qualified. In that regard, Carrillo specifies his statutory ineligibility for the relief of cancellation of removal. "Simply by reading the relevant statutes," he asserts, Martell "would have been aware of the drastic consequences of [his] guilty plea." *Id.* at 23.

As the Supreme Court explained in *Padilla*, a court conducting a deficient performance evaluation must "determine whether counsel's representation 'fell below an objective standard of reasonableness,'" with the proper measure being "'reasonableness under prevailing professional norms.'" *See* 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688). Further, the *Padilla* Court specified that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. The Court elaborated that

23

> [i]mmigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

*Id.* at 369 (footnote omitted). Concisely stating its holding, the Court articulated that "we now hold that counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374.

Thereafter, in *Swaby*, this Court invoked *Padilla* for the proposition that "[c]ounsel's failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment." *See Swaby*, 855 F.3d at 240. "Effective representation by counsel," we explained, "requires that counsel provide correct advice when the deportation consequences are clear." *Id.* (citing *Padilla*, 559 U.S. at 369); *see Carrillo Murillo I*, 927 F.3d at 815 (quoting this language from *Swaby* in our remand instructions to the district court).

Considering the clear — and unclear — deportation consequences of Carrillo's guilty plea, we join the district court in rejecting his assertion that Martell failed to comply with the constitutional obligation expressed in *Padilla* and *Swaby*. *See* Remand Order 19 (concluding that "Martell was not constitutionally required to provide advice beyond what was provided"). All that was clear here is that Carrillo was pleading guilty to "a drug

24

trafficking crime" that constitutes an "aggravated felony" under the Immigration and Nationality Act, *see* 8 U.S.C. § 1101(a)(43)(B), thereby rendering him "deportable," *id.* § 1227(a)(2)(A)(iii) (providing that a noncitizen "convicted of an aggravated felony at any time after admission is deportable").

To be sure, the Supreme Court has referred to being "deportable" under § 1227(a)(2)(A)(iii) as being "subject to mandatory deportation." *See Lee v. United States*, 582 U.S. 357, 361-62 (2017). And in *Padilla*, the Court observed that such deportability makes "deportation virtually mandatory"; "that constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation"; and that it "could easily be determined from reading the removal statute" that Padilla's "deportation was presumptively mandatory." *See* 559 U.S. at 359-60, 369. In other words, as we recognized in *Swaby*, "deportation is so likely for those convicted of an aggravated felony that it is akin to 'mandatory deportation.'" *See* 855 F.3d at 237 (citing *Akinsade*, 686 F.3d at 254, wherein we concluded that a warning "that Akinsade's plea *could* lead to deportation" neither "correct[ed] counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense" nor "properly inform[ed]" him that he faced "mandatory deportation" by pleading guilty).

Critically, being "subject to mandatory deportation" does not mean that the noncitizen defendant will absolutely be deported or even absolutely be found deportable. A deportability finding and subsequent deportation may be so likely that they are "virtually" or "presumptively mandatory," but they are not wholly inevitable. The foregoing authorities reflect this. Moreover, Carrillo acknowledged it in the district court,

25

where his counsel recognized that a noncitizen with an aggravated felony conviction like Carrillo's may avoid a deportability finding based on eligibility for "other relief" and may avoid deportation based on "the executive's prerogative whether to actually remove a human being from the United States." *See* J.A. 294-95.

So, because it was clear that Carrillo was pleading guilty to a crime that would render him deportable under the Immigration and Nationality Act, Martell was constitutionally required not merely to tell Carrillo that his plea "may carry a risk of adverse immigration consequences," but to give him the correct and more specific advice that his plea would carry a risk of deportation by rendering him deportable. *See Padilla*, 559 U.S. at 369. Martell satisfied this obligation by correctly and specifically informing Carrillo that he would be "deportable," "removable," and subject to deportation proceedings upon completion of his sentence.

Although Carrillo faults Martell for failing to use the terms "mandatory deportation" or "presumptively mandatory deportation," we do not. As explained by persuasive authorities cited by the district court, *see* Remand Order 17-19, using those bare terms could easily mislead a noncitizen defendant to believe that deportation would be a certainty. *See, e.g.*, *Dilang Dat v. United States*, 983 F.3d 1045, 1048-49 (8th Cir. 2020) (recognizing that a noncitizen "with a deportable conviction may still seek relief from removal" and that "[t]hese immigration law complexities should caution any criminal defense attorney not to advise a defendant considering whether to plead guilty that the result of a post-conviction, contested removal proceeding is clear and certain" (internal quotation marks omitted)); *United States v. Cazarez-Santos*, 66 F. Supp. 3d 1301, 1309

26

(S.D. Cal. 2014) (warning that "[i]f attorneys are universally required to advise their clients they were 'virtually certain' to be deported, most defendants would undoubtedly accept that advice as true," which would lead some to "be dissuaded from taking advantage of favorable provisions of law that might exempt them from deportation" and others to "be coerced by excessively dire warnings into going to trial when in fact, pleading guilty is their best option").

That is not to say that a criminal defense lawyer must refrain from using terms like "mandatory deportation" or "presumptively mandatory deportation." Indeed, it could be beneficial to a noncitizen defendant for his lawyer to use those terms with an accurate explanation that there is generally a high likelihood — but lack of certainty — that the defendant will be found deportable and then deported. Yet the lawyer is not constitutionally required to do so, as the Sixth Amendment mandates advice only as to the clear and certain immigration consequences of a guilty plea. *See Padilla*, 559 U.S. at 369; *see also Dilang Dat*, 983 F.3d at 1048 ("In *Padilla*, the Supreme Court held that counsel must advise the defendant that his conviction would make him 'deportable' . . . if he pleaded guilty, not that deportation or removal was either mandatory or certain." (internal quotation marks omitted)).

That brings us to Carrillo's suggestion that a deportability finding was certain in his particular case, such that Martell was constitutionally required to advise him that he would, in fact, be found deportable. Carrillo relies on his clear lack of statutory eligibility for the relief of cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3) (disqualifying from cancellation of removal a lawful permanent resident who has "been convicted of any

27

aggravated felony"). As Carrillo himself acknowledged in the district court, however, there is "other relief" for which a noncitizen with an aggravated felony conviction could qualify, such as relief based on a civil war in or invasion of the home country, being a crime victim, or cooperating in a criminal investigation or prosecution. *See* J.A. 288, 294; *see also Cazarez-Santos*, 66 F. Supp. 3d at 1309 (observing that "[t]here are a number of ways non-citizen defendants who plead guilty to aggravated felonies can avoid deportation"). Meanwhile, Carrillo has made no effort to catalog the possible relief or demonstrate his clear ineligibility for it. Instead, Carrillo has insisted without proof that "a clear certainty" exists that "there was zero relief for [him]." *See* J.A. 288.

In these circumstances, Carrillo has failed to demonstrate that Martell was constitutionally required to advise him that he was ineligible for any relief from deportation and thus would, in fact, be found deportable. And having otherwise failed to establish *Strickland* deficient performance, he has proffered no meritorious ground for challenging the district court's Remand Order.

IV.

Pursuant to the foregoing, we affirm the district court's rejection of Carrillo's Sixth Amendment ineffective assistance of counsel claim and denial of his 28 U.S.C. § 2255 motion for failure to establish *Strickland* deficient performance.

*AFFIRMED*

28

THACKER, Circuit Judge, dissenting:

Because the majority opinion is squarely at odds with our precedent, I must dissent. *See United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) ("A panel of this Court cannot overrule a precedential decision . . . ." (citation omitted)); *see also McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting en banc or the Supreme Court.").

When this case originally appeared before us, we did not address whether Martell's performance was deficient because there had not been an evidentiary hearing at that time. But, of note, we explained, "we are confident our current precedent sheds sufficient light on the appropriate standard" to answer that question on remand. *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019) ("*Murillo I*") (citing *United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) ("Effective representation by counsel requires that counsel provide correct advice when the deportation consequences are clear.")); *see also Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) ("[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."). Indeed, it does. In my view, *Padilla* and *Swaby* plainly dictate a finding that Martell's performance was deficient here.

As the majority explains, Appellant pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 -- an "aggravated felony" pursuant to the Immigration and Nationality Act. *Murillo I*, 927 F.3d at 811; *see also* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" as "illicit trafficking in a controlled substance, including a drug trafficking crime). "Under federal immigration law, any

29

[noncitizen] convicted of an 'aggravated felony' is deportable." *Swaby*, 855 F.3d at 236. While there may be certain limited exceptions, we have consistently recognized that "deportation is so likely for those convicted of an aggravated felony that it is *akin to 'mandatory deportation*.'" *Id*. at 237 (emphasis supplied) (citing *United States v. Akinsade*, 686 F.3d 248, 254 (4th Cir. 2012)); *see also* Ante at 25 (recognizing that the Supreme Court has "referred to being 'deportable' . . . as being 'subject to mandatory deportation'").

And, the Supreme Court has left no doubt that "[c]ounsel's failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment." *Swaby*, 855 F.3d at 240 (quoting *Padilla*, 559 U.S. at 368). In other words, "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369.

Based on these principles, Martell was required to provide advice reflecting that deportation was mandatory. But instead of advising Appellant of this "clear and explicit" immigration consequence, Martell characterized the likelihood of deportation flowing from Appellant's plea as a mere "possibility." *Swaby*, 855 F.3d at 240; J.A. 334. The district court found that "Martell told [Appellant] that he was 'deportable' and 'removable' and that he would be subject to immigration deportation proceedings after serving his sentence." *United States v. Carrillo Murillo*, No. 1:16-cr-00073 (E.D. Va. May 12, 2023), ECF No. 135. But, critically, the district court also recognized that "Martell did not tell [Appellant] that as a result of his guilty plea, he would, in fact, be deported, that he was subject to 'mandatory deportation' or 'presumptively mandatory deportation' or ineligible

30

for cancellation of removal." *Id.* Indeed, Martell herself testified that "[s]he did not say that [Appellant] would certainly be removed from the United States," J.A. 309–10, and that she "did not use the words that it would be a mandatory -- I didn't tell him that it was a mandatory deportable offense," *id.* at 265. Instead, Martell explained that she simply told Appellant, "you *may* be deported." *Id.* at 267 (emphasis supplied); *see also id.* at 18–19 (After informing the district court that Appellant was a lawful permanent resident, the district court asked Martell, "Possibility of deportation then?" to which Martell responded, "*Possibility.*" (emphasis supplied)).

Martell explained that she did not characterize the deportation as mandatory because she could not say for certain that Appellant would be removed from the United States "because in her experience many clients with similar convictions ended up staying in the country due to agreements with the government and other reasons." J.A. 309–10. According to the majority, this "confessed lack of certainty" as to Appellant's deportation clears Martell of any wrongdoing as she "did not impart any incorrect advice" nor did she "fail to notify [Appellant] that there would be deportation consequences to his guilty plea." Ante at 13, 22. But the problem with that analysis is that it completely disregards *Padilla* and *Swaby*.

In *Padilla*, the United States Supreme Court held that the Sixth Amendment's guarantee of effective assistance of counsel protects a criminal defendant from erroneous advice about deportation, and that a defendant establishes *Strickland*'s deficient performance prong by demonstrating that counsel failed to accurately advise the defendant when the immigration consequence of such a guilty plea "could easily be determined from

31

reading the removal statute." *Padilla*, 559 U.S. at 368–69. In that case, counsel provided his client with the false assurance that his aggravated felony conviction would not lead to his deportation.

The Supreme Court acknowledged that immigration law can be "complex," and that where the law is unclear or discretionary, it may be sufficient to advise a client that he "may" face deportation. *Id.* at 369. Significantly, however, in *Padilla* the Court emphasized that where the deportation consequences of a plea are "truly clear . . . the duty to give correct advice is equally clear." *Id.* And the Court further explained that, under current federal immigration law, a noncitizen's aggravated felony conviction has a "succinct, clear, and explicit" consequence of rendering them categorically deportable. *Id.* at 368. Because "preserving [a] client's right to remain in the United States may be more important to the client than any potential jail sentence," the Sixth Amendment right to effective assistance of counsel requires that defense counsel "inform her client whether his plea carries a risk of deportation." *Id.* at 368, 374. Thus, the Court found counsel's performance deficient in *Padilla*. *Id.* at 369 ("The consequences of Padilla's plea could be easily determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect . . . . [Therefore,] Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*.").

Then, in *Swaby*, we relied on this Supreme Court precedent to hold that because an aggravated felony conviction inevitably results in a mandatory deportation, advising a defendant that there is only a *risk*, but *not a certainty*, of deportation constitutes deficient performance pursuant to *Strickland*. *Swaby*, 855 F.3d at 240. We noted that, like in

32

*Padilla*, counsel "failed to inform Swaby that, under the plea agreement, Swaby would be pleading to an aggravated felony that would render him categorically deportable." *Id.* And like the false assurances Padilla's counsel made, Swaby's counsel advised him only that "the plea agreement presented only a risk, but not a certainty, of deportation." *Id.* We held that this was deficient performance under the Sixth Amendment because "[e]ffective representation by counsel requires that counsel provide correct advice when the deportation consequences are clear." *Id.* And because noncitizens "rendered deportable because of an aggravated felony are ineligible for asylum or cancellation of removal," which is "akin to mandatory deportation," we held that advising a noncitizen that there is only a *risk*, but *not a certainty*, of deportation constitutes deficient performance. *Id.* at 236–37 (internal quotation marks omitted) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013); *Akinsade*, 686 F.3d at 254).

To me, the similarity between this case and *Padilla* and *Swaby* could not be more clear. Yet, the majority attempts to factually distinguish *Padilla* and *Swaby* from the case at hand because in both of those cases, counsel failed to advise that the offenses were aggravated felonies at all. Ante at 21–22. But this is a distinction without a difference. The key point is that in *Padilla*, *Swaby* -- and this case -- the offenses at issue were, in fact, aggravated felonies. And these precedential rulings from both the Supreme Court and our court focus on the fact that *because* the offenses were aggravated felonies, the deportation consequences were *clear* and corresponding warnings were constitutionally required. *See Padilla*, 559 U.S. at 369 ("The consequences of Padilla's [aggravated felony] plea could be easily determined from reading the removal statute, his deportation was presumptively

33

mandatory, and his counsel's advice [providing false assurances that his conviction would not result in his removal] was incorrect."); *Swaby*, 855 F.3d at 240 ("[Swaby's counsel] failed to inform Swaby that, under the plea agreement, Swaby would be pleading to an aggravated felony that would render him categorically deportable…[e]ffective representation by counsel requires that counsel provide correct advice when the deportation consequences are clear."). Here, there is no daylight between Martell's actions and those of the counsel in *Padilla* and *Swaby*.

Martell failed to advise Appellant that, because he pled guilty to an aggravated felony, he would be subject to mandatory deportation -- not just "deportable" or "removable." There is a distinct difference. One implies mere risk, while the other accurately conveys near certainty. *See Swaby*, 855 F.3d at 238 ("While neither [counsel] nor the district court could guarantee Swaby's immigration consequences, the district court warned Swaby of merely the 'risk' of deportation. Neither [counsel] nor the district court informed Swaby that he was pleading to a crime that rendered him automatically deportable."). As explained above, "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369. Because our precedent makes "truly clear" that the immigration consequence was mandatory deportation, it is "equally clear" that Martell was required to advise Appellant that he would be rendered "categorically" or "automatically deportable." *Swaby*, 855 F.3d at 240.

Therefore, Martell's failure to provide Appellant with the "correct advice when the deportation consequences [were] clear," constituted deficient performance pursuant to *Strickland*. *Swaby*, 855 F.3d at 239–240 (citing *Strickland*, 466 U.S. 668).

34

At bottom, the analysis here is straightforward:

- Appellant pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 -- an "aggravated felony" pursuant to the Immigration and Nationality Act.  8 U.S.C. § 1101(a)(43)(B);

- We have consistently recognized that "deportation is so likely for those convicted of an aggravated felony that it is *akin to 'mandatory deportation.'*"  *Swaby*, 855 F.3d at 237 (emphasis supplied) (citing *Akinsade*, 686 F.3d at 254); *see also* Ante at 25 (recognizing that the Supreme Court has "referred to being 'deportable' . . . as being 'subject to mandatory deportation'");

- The Supreme Court has left no doubt that "[c]ounsel's failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment."  *Swaby*, 855 F.3d at 240 (quoting *Padilla*, 559 U.S. at 368);

- Martell herself testified that "[s]he did not say that [Appellant] would certainly be removed from the United States," J.A. 309–10, and that she "did not use the words that it would be a mandatory -- I didn't tell him that it was a mandatory deportable offense." *Id.* at 265.  Instead, Martell explained that she simply told Appellant, "you may be deported." *Id.* at 267;

- The Court in *Padilla* explained that, under current federal immigration law, a noncitizen's aggravated felony conviction has a "succinct, clear, and explicit" consequence of rendering them categorically deportable. *Padilla*, 559 U.S. at 368.  And because "preserving [a] client's right to remain in the United States may be more important to the client than any potential jail sentence," the Sixth Amendment right to effective assistance of counsel requires that defense counsel "inform her client whether his plea carries a risk of deportation." *Id.* at 368, 374;

- Because noncitizens "rendered deportable because of an aggravated felony are ineligible for asylum or cancellation of removal," which is "akin to mandatory deportation," we have held that advising a noncitizen that there is only a *risk*, but *not a certainty*, of deportation constitutes deficient performance under a *Strickland* inquiry.  *Swaby*, 855 F.3d at 236–37 (internal quotation marks omitted) (citing *Moncrieffe*, 569 U.S. at 187; *Akinsade*, 686 F.3d at 254);

35

- Because our precedent makes "truly clear" that the immigration consequence to Appellant was mandatory deportation, it is "equally clear" that Martell was required to advise Appellant that he would be rendered "categorically" or "automatically deportable." *Swaby*, 855 F.3d at 240. She did not do so. Therefore, consistent with *Padilla* and *Swaby*, Martell's performance was deficient.

As a result, I would reverse the district court's decision denying Appellant's 28 U.S.C. § 2255 motion and conclude that Appellant demonstrated constitutionally deficient performance sufficient to prevail on his ineffective assistance of counsel claim. To hold otherwise runs counter to our precedent.

36